ATTORNEYS FOR APPELLANT
Robert B. Clemens
Curtis T. Jones
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Danford R. Due
Scott E. Andres
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 33S01-1206-CT-312

HOLIDAY HOSPITALITY FRANCHISING, INC.,

*Appellant (Defendant below),*

v.

AMCO INSURANCE COMPANY,

*Appellee (Plaintiff below).*

Appeal from the Henry Circuit Court, No. 33C01-0901-CT-0003
The Honorable Mary G. Willis, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 33A01-1103-CT-00104

**March 6, 2013**

**David, Justice.**

A motel and an insurance company entered into an insurance contract that specifically excluded several categories of injury and harm—including harm resulting from acts of sexual molestation by motel employees. After an off-duty motel employee (now convicted for his crimes) molested a young motel guest, the motel's insurer sought a declaratory judgment to enforce its reading of the contract disclaiming coverage for, and its duty to defend against, a civil complaint brought by the motel guest. The trial court granted summary judgment in favor of the insurer, and the Court of Appeals reversed. We now affirm the trial court.

**Facts and Procedural History**

In mid-May 2007, R.M.H., a minor, was a guest at a motel in New Castle, Indiana, operating under the name of Holiday Inn Express-New Castle, LLC ("Holiday Inn Express"), and owned by Anil Megha. The motel was a Holiday Inn franchise, established pursuant to an agreement with Holiday Hospitality Franchising, Inc. During this stay, R.M.H. was molested by a Holiday Inn Express employee, Michael Forshey, who entered R.M.H.'s locked room at night.[1]

At the time R.M.H. was molested, Holiday Inn Express was insured under a policy issued by Amco Insurance Company ("AMCO"). Holiday Hospitality and Megha were additional insureds under the policy's terms. The policy provided coverage for, as well as a duty to defend against, claims for bodily injury and personal and advertising injury liability.[2] However, AMCO had no duty to defend against any suit to which the policy did not apply.

AMCO's policy expressly disclaimed coverage for both bodily injury and personal and advertising injury when the injury arose out of intentional conduct. Specifically, it excluded coverage for bodily injury "which is expected or intended by the insured," even if the actual injury "[i]s of a different kind, quality or degree than initially expected or intended," or it "[i]s sustained by a different person, entity, real property, or personal property than that initially expected or intended." (App. at 129.) For personal and advertising injury, the policy did not apply to such injury "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (App. at 136.)

---

[1] Forshey was later convicted of felony child molestation.

[2] "Bodily injury" is defined by the policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (App. at 147.) "Personal and advertising injury" is defined as "injury, including consequential 'bodily injury', arising out of . . . [f]alse arrest, detention or imprisonment." (App. at 149.)

2

The policy also disclaimed coverage for acts of molestation or abuse, by excluding any bodily injury or personal or advertising injury arising from "[t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of the insured." (App. at 133, 137.). This included claims of negligent employment, investigation, supervision, reporting (or failure to report), or retention of any insured responsible for the abuse or molestation.

Additionally, AMCO only provided coverage for bodily injury caused by an "occurrence," which the policy defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (App. at 128, 149.) And finally, the policy contained a "Separation of Insureds" provision, providing that the policy applied "[a]s if each Named Insured were the only Named Insured . . . and . . . [s]eparately to each insured against whom claim is made or 'suit' is brought." (App. at 146.)

In September 2008, R.M.H.'s mother, S.H., sued Holiday Inn Express, Holiday Hospitality, and Megha. She claimed battery, intentional infliction of emotional distress, negligent hiring, negligent retention and supervision, and negligent infliction of emotional distress, all brought under agency and vicarious liability theories.[3]

AMCO filed a separate complaint in January 2009, seeking a declaratory judgment that it owed no coverage for any potential liability arising from S.H.'s complaint, and also that it had no duty to defend Holiday Inn Express, Holiday Hospitality, or Megha. AMCO then filed a motion for summary judgment, with S.H. and Holiday Hospitality filing separate responses that Holiday

---

[3] In this underlying complaint, Forshey was found to have been acting outside the course and scope of his employment when he molested R.M.H.. As a result, the trial court granted summary judgment for the collective defendants as to the issue of vicarious liability.

Inn Express and Megha later joined. The trial court granted AMCO's motion, framing its order as a final judgment and appealable order.

Holiday Hospitality appealed. S.H., Holiday Inn Express, and Megha did *not* file a notice of appeal or joinder in Holiday Hospitality's appeal, but instead filed "Briefs of Interested Parties." The Court of Appeals reversed and remanded, concluding that an "occurrence" took place under the terms of AMCO's insurance policy, and that there remained a genuine issue of material fact as to whether R.M.H. was "in the care, custody or control" of Holiday Inn Express at the time Forshey molested him. Holiday Hospitality Franchising, Inc. v. Amco Ins. Co., 955 N.E.2d 827, 836 (Ind. Ct. App. 2011).

On rehearing, the Court of Appeals clarified that its reversal applied only to Holiday Hospitality, Holiday Hospitality Franchising, Inc. v. Amco Ins. Co., 963 N.E.2d 1125, 1125–26 (Ind. Ct. App. 2012), because even though Appellate Rule 17(A) made S.H., Holiday Inn Express, and Megha "parties to the appeal," that did not relieve them of their Rule 9(A) obligation to file a notice of appeal within thirty days after a final judgment was entered against them or forfeit appellate relief, id. at 1126.

We granted transfer, thereby vacating the two Court of Appeals decisions.[4] Holiday Hospitality Franchising, Inc. v. Amco Ins. Co., 969 N.E.2d 88 (Ind. 2012) (table); Ind. Appellate Rule 58(A).

---

[4] AMCO, Holiday Inn Express, and Megha all sought transfer.

**Standard of Review**

Summary judgment is only appropriate when the moving party affirmatively shows that there are no genuine issues of material fact with regard to a particular issue or claim. Ind. Trial Rule 56(C); Town of Avon v. W. Cent. Conservancy Dist., 957 N.E.2d 598, 602 (Ind. 2011). The non-moving party then bears the burden of coming forward with designated evidence showing the existence of a genuine issue of material fact. Id.

An appellate court reviews these cases through the same lens, and we view all designated evidence and reasonable inferences in a light most favorable to the non-moving party; any doubts are resolved against the moving party. Id. We will affirm a trial court's summary judgment on any theory supported by the record. Woodruff v. Ind. Family & Soc. Servs. Admin., 964 N.E.2d 784, 790 (Ind. 2012). When the facts are undisputed, reversal is only appropriate if the trial court incorrectly applied the law to those facts. Id.

The construction of a contract is particularly well-suited for de novo appellate review, because it generally presents questions purely of law. Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). Insurance contracts are governed by the same rules of construction as any other contract. Id. Clear and unambiguous policy language is given its ordinary meaning, id., in order to accomplish the primary goal of contract interpretation: "to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties," First Fed. Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 603 (Ind. 1990).

Where contractual language is ambiguous, we generally resolve those ambiguities in favor of the insured, Guzorek, 690 N.E.2d at 667, but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole, see Key Markets, 559 N.E.2d at 603. However, the failure to define a contractual term does not necessarily make that term ambiguous, Guzorek, 690 N.E.2d at 667, nor does a simple disagreement about the term's meaning. "Rather,

5

an ambiguity exists where the provision is susceptible to more than one reasonable interpretation." Id.

## Discussion

AMCO sought summary judgment based on two distinct provisions of the contract. First, it said that the contractual definition of "occurrence" did not extend to Forshey's criminal conduct or Holiday Inn Express's decision to hire and retain him. Second, it argued that the policy specifically excluded coverage for acts of abuse and molestation, as well as coverage for any negligence in hiring or retaining someone committing those acts. Because we find this second issue dispositive on appeal, we need not address the first.[5]

We think it obvious that the plain and ordinary meaning of the abuse/molestation exclusion as a whole is that both parties intended to exclude from coverage those claims arising from conduct like Forshey's. However, the exclusion is limited to acts occurring when the victim is in the "care, custody or control" of an insured, making the issue a bit counter-intuitive. On one hand, the insurer is arguing that R.M.H. *was* under the "care, custody or control" of its insureds so it can *deny* coverage. And on the other hand, the insureds are arguing that R.M.H. was *not* under their "care, custody or control," in order to *obtain* coverage; in essence, they seek insurance coverage for injury to an individual over whom they claim they had little (if any) power or authority.

Be that as it may, the phrase "care, custody or control" is undefined in the policy agreement, but no party claims it is ambiguous. Instead, they dispute the existence (or non-

---

[5] We also do not need to address the petition of S.H., Holiday Inn Express, and Megha, challenging the Court of Appeals's opinion on rehearing.

existence) of a genuine issue of material fact as to whether R.M.H. was "in the care, custody or control" of Holiday Inn Express, Holiday Hospitality, or Megha when he was molested; but they do so without advancing a particular definition for the phrase.

Holiday Hospitality points to <u>Am. Family Mut. Ins. Co. v. Bentley</u>, 170 Ind. App. 321, 352 N.E.2d 860 (1976), in which the Court of Appeals said "application of such clauses depends on the facts of each case." <u>Id.</u> at 328, 352 N.E.2d at 864. And in this case, Holiday Hospitality says, there is no evidence that Holiday Inn Express, Megha, or Holiday Hospitality exercised any care or control over R.M.H., nor did S.H. expect for R.M.H. to be under anyone's care or control other than his friend's mother. "Thus, the issue of whether R.M.H. was in the care custody or control of Holiday Hospitality or the Franchisee Defendants presents a genuine issue of material fact that can not be determined on summary judgment." (Appellant's Br. at 15.)

AMCO argues that "it is readily evident that R.M.H. was in the 'care' of the motel at the time of the molestation," because "the molestation took place in one of the motel's rooms while R.M.H. was a guest at the motel." (Appellee's Br. at 16.) Because R.M.H. was a guest, he was therefore a business invitee owed a particular duty of care by Holiday Hospitality and its franchisees. "Put simply, the motel was legally charged with the 'care' of R.M.H. while he stayed at its premises and any reasonable person reading the Policy would understand as much." (Appellee's Br. at 17.)

For its part, the Court of Appeals rejected AMCO's argument, concluding that being a business invitee "is not the same as being 'in the care, custody or control' of Holiday Inn." <u>Holiday Hospitality</u>, 955 N.E.2d at 835. A hotel's duty of care with respect to its guests "governs the responsibility given it to reasonably protect business invitees and to keep the business property in a reasonably safe condition," but "[b]eing in the care, custody, or control of someone, however, requires more than a mere business invitee status. In the context of a hotel, it would require something additional, such as a minor being supervised by hotel employees." <u>Id.</u>

7

These relative positions, however, are of little value without a defined frame of reference. Given that the parties seem to agree as to the unambiguous nature of the provision, we look to the "usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended." Hilbert v. Conseco Serv., LLC, 836 N.E.2d 1001, 1008 (Ind. Ct. App. 2005), trans. denied. Nothing in the terms of this contract indicates that the phrase "care, custody or control" is meant to have anything other than a plain and ordinary meaning. The lack of ambiguity also negates any need to construe the clause against the drafting party; instead we construe it to reflect the intent of the parties and harmonize it with the contract as a whole.

Webster's defines "care" in this context as "[t]he function of watching, guarding, or overseeing." Webster's II New College Dictionary 168 (1995). "Custody" is defined as "[t]he act or right of guarding, esp. such a right granted by a court." Id. at 280. "Control" means "[t]o exercise authority or influence over" or "[t]o hold in restraint." Id. at 246. Black's Law Dictionary is similar, defining "care" as "[u]nder the law of negligence or of obligations, the conduct demanded of a person in a given situation," Black's Law Dictionary 240 (9th ed. 2009), defining "custody" as "[t]he care and control of a thing or person for inspection, preservation, or security," id. at 441, and "control" as [t]o exercise power or influence over," id. at 378.

We think these are reasonable definitions for these terms as they are used in the insurance policy at issue. We also note that the policy lists the three terms in the disjunctive, thus not requiring all three to be satisfied for coverage to be excluded. The question, then, is whether the designated evidence is sufficient to hold, as a matter of law, that R.M.H. was in the "care," "custody," or "control" of Holiday Inn Express, Megha, or Holiday Hospitality. Bentley is

correct in noting that this is a fact-sensitive inquiry,[6] but that does not necessarily preclude summary judgment when the material facts are undisputed.

Here, it seems apparent from the facts that R.M.H. was not in the "custody" of Holiday Inn Express. We can reasonably imagine that he was, to some extent, under the "control" of Holiday Inn Express (i.e. the motel probably had the power to exercise some authority or power over R.M.H. if, for example, he smoked a cigarette in a non-smoking room, or made loud noises that disturbed neighboring guests); however, no such guest policies or rules are present in the record before us. As such, this conclusion would be pure speculation.

However, given the scope and context of the insurance policy, we believe the facts are sufficient to show, as a matter of law, that R.M.H. was in the "care" of Holiday Inn Express (as that term was used in the policy) at the time the molestation occurred. It is undisputed that R.M.H. was molested by Forshey while R.M.H. was a guest at Holiday Inn Express, staying in a room rented to the mother of R.M.H.'s friend. It is further undisputed that R.M.H. was in that guest room, behind a door locked by an electronic key provided by Holiday Inn Express, when Forshey entered and molested him.[7] It is also undisputed that at this time—because of R.M.H.'s status as a guest—Holiday Inn Express owed him a duty of care by law.[8]

---

[6] The "care, custody or control" clause arises more frequently in the context of property damage exclusions in construction or manufacturing contractor insurance policies. See Bentley, 170 Ind. App. at 328, 352 N.E.2d at 864. In that context, to determine whether the clause is satisfied, courts tend to look at "(1) whether the property is personalty or realty; (2) the location, size, and other characteristics of the property; and (3) the insured's relationship to the property, including the insured's duties with respect to the property, the nature and extent of the insured's control over the property, and any interest the insured may have in the property." 43 Am. Jur. 2d Insurance § 695.

[7] We also note that the insurance policy required Holiday Inn Express to maintain a number of "Protective Safeguards," such as sprinkler systems, fire alarms, burglar alarms, and watchman services. Though these safeguards were required under the policy in exchange for reduced premiums only on Holiday Inn Express's property damage coverage, it is axiomatic that they also provide a needed safety benefit to the

The dissent points out that the evidence shows R.M.H.'s mother intended and expected him to be under the care of a friend's mother—the adult actually renting the hotel room in which R.M.H. was molested— while staying at the hotel, and that at no point did R.M.H.'s mother communicate to any of the defendants a desire or request for a hotel employee to provide care for R.M.H. But this does not mean that Holiday Inn Express did not undertake to do so anyway, by its own affirmative conduct. That R.M.H. was intended to be under the care of his friend's mother does not mean he could not also be under the care of Holiday Inn Express—the two concepts need not be mutually exclusive.

Simply put, we believe these facts reflect precisely the sort of scenario contemplated by the parties to be excluded from coverage when they agreed to the insurance contract. In fact, if

---

motel's guests, just like a building code or fire code. See, e.g., Noble v. Alis, 474 N.E.2d 109, 111 (Ind. Ct. App. 1985) (purpose of city housing code to "protect the public health, safety, and welfare").

[8] "[A] hotel guest is at least the equivalent of a business invitee and, as such, is entitled to a duty of reasonable care for the guest's safety." Ellis v. Luxbury Hotels, Inc., 716 N.E.2d 359, 360 (Ind. 1999). This duty of care does not make the hotel a guarantor of its guests' safety, see Booher v. Sheeram, LLC, 937 N.E.2d 392, 395 (Ind. Ct. App. 2010), trans. denied, and Holiday Hospitality is correct that in Ellis we were unable to determine, based on the evidence designated for summary judgment, whether a particular criminal act was sufficiently foreseeable so as to fall within the scope of this duty of care. However, that does not mean the hotel in Ellis did not owe any duty of care whatsoever.

Holiday Inn Express and Megha believe analogizing "duty of care" and "care" to be "nonsensical," and that duty of care is "wholly separate and distinct from the issue of whether R.M.H. was in the 'care, custody or control' of Holiday Inn for purposes of the exclusionary language at issue here." (Interested Parties' Reply Br. at 6.) Carrying this argument "to its logical conclusion" they say, "would result in every hotel guest being in the 'care' of the hotel during their stay. This is hardly the case . . . it is likely that most 'reasonable persons' would agree that they are not in the 'care' of a hotel during their hotel stay." (Interested Parties' Reply Br. at 5–6.)

But we think the line between the two concepts is not as bright and distinct as Holiday Inn Express and Megha claim. Though we agree that the analogy is not directly on point, it remains informative based on the definitions of "care," "custody," and "control" above.

these facts did *not* reflect the contemplated exclusion, we would struggle to imagine what reasonably could and still remain within the confines of an ordinary motel business.[9]

Finally, we note that we do not need to provide discrete analysis on this issue for Holiday Hospitality, despite the policy's Separation of Insureds clause. That provision provides that the policy applies "a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claim is made or 'suit' is brought." (App. at 146.)

However, the policy only lists one "Named Insured"—Holiday Inn Express. (App. at 78.) Holiday Hospitality is instead classified as an "Automatic Additional Insured," and afforded coverage by virtue of being a "Grantor of Franchise or License." (App. at 142.) Accordingly, subsection (a) of the Separation of Insured provision has no impact on this analysis. Likewise, applying this abuse/molestation exclusion "separately to each insured" does not change the analysis. The exclusion bars coverage for abuse or molestation of someone "while in the care, custody or control of *any* insured," or for the negligent hiring or retention "of a person for whom *any* insured is or ever was legally responsible" and who commits abuse or molest. (App. at 133–34, 137 (emphasis added).) The use of the word "any" in this provision means the fact that R.M.H. was in the care of Holiday Inn Express, and that Holiday Inn Express employed

---

[9] This is not a bright-line declaration that any guest of any motel is *ipso facto* "in the care of" that motel and we recognize that the facts of this case are not the same as those from other jurisdictions applying this type of exclusion. See, e.g., Sarah G. v. Me. Bonding & Cas. Co., 866 A.2d 835 (Me. 2005) (hotel owner took nude photographs of minor child staying at hotel alone); Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co., 757 A.2d 1074 (Conn. 2000) (child sexually abused by other children while attending preschool program); Doe v. Lenarz, 2007 WL 969610 (Conn. Super. Ct. 2007) (minor child molested by instructor at karate studio when enrolled in karate classes); 12th St. Gym, Inc. v. Phila. Indem. Ins. Co., 2006 WL 1652690 (Pa. Com. Pl. 2006) (gym member sexually assaulted by massage therapist in small, closed massage room). But that does not mean the facts here are insufficient.

11

Forshey, bars coverage as conclusively for Holiday Hospitality and Megha as it does for Holiday Inn Express.[10]

**Conclusion**

We therefore affirm the trial court's grant of summary judgment.

Massa and Rush, JJ., concur.

Dickson, C.J., concurs with separate opinion.

Rucker, J., dissents with separate opinion.

---

[10] It would be a different circumstance if the provision applied to "the" insured. That language is used, for example, in the "Expected or Intended Injury" exclusion, barring coverage for bodily injury "which is expected or intended by *the* insured," (App. at 129 (emphasis added)), the "Contractual Liability" exclusion, barring coverage for bodily injury "for which *the* insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," (App. at 129 (emphasis added)), and in the provision excluding personal and advertising liability "[c]aused by or at the direction of *the* insured," (App. at 136 (emphasis added).) A number of other exclusions, however, use the word "any" just like the one at issue in this case, and we must assume the distinction was both intended and intended to make a difference.

**Dickson, C.J., concurring.**

I write separately because I believe that the proper understanding of "care" is determined by well-established Indiana law that a hotel guest is considered a business invitee and is entitled a duty of reasonable care. Ellis v. Luxbury Hotels, Inc., 716 N.E.2d 359, 360 (Ind. 1999). Here, the exclusion is phrased in the disjunctive, and excludes coverage when the victim is in the "care, custody, _or_ control" of any insured. I agree with Justice Rucker's dissent with respect to the question of fact as to "custody" and "control." But in this case, "care" exists as a matter of law. As such, the exclusion applies, and the summary judgment for the insurer was correct.

**Rucker, J., dissenting.**

The Court of Appeals concluded there is a genuine issue of material fact as to whether R.M.H. was "in the care, custody or control" of Holiday Inn Express. Holiday Hospitality Franchising, Inc. v. Amco Ins. Co., 955 N.E.2d 827, 836 (Ind. Ct. App. 2011). At least with respect to "care" and "control" I agree with the court's conclusion and would thus deny summary judgment in favor of AMCO on this issue. Therefore I respectfully dissent.

I agree with the majority that R.M.H. was not in the "custody" of Holiday Inn Express. And I also agree that "to some extent" R.M.H was under Holiday Inn Express' "control." Slip op. at 9. But this very qualifier also implies the opposite: "to some extent" R.M.H. was not under the motel's control. It is thus left to the trier of fact to resolve these competing inferences. This leaves us with deciding whether R.M.H. was in the "care" of Holiday Inn Express.

Relying on its plain and ordinary meaning the majority defines "care" in part as "[t]he function of watching, guarding, or overseeing." Slip op. at 8 (quoting Webster's II New College Dictionary 168 (1995)). But there is nothing in the record before us or in the case authority cited by the parties supporting the notion that as a matter of law a motel is obligated or otherwise required to engage in any of the foregoing functions. And at the very least the facts are in dispute concerning whether in this case Holiday Inn Express actually engaged in "watching, guarding, or overseeing" R.M.H. Although not addressing this precise point, in support of its motion for summary judgment AMCO submitted the motel's response to AMCO's requests for admissions. In relevant part Holiday Inn Express admitted that it "rented two (2) rooms to Amy McGinnis who was staying at the hotel with her sons, both minors. R.M.H. was invited by Amy McGinnis and/or one of her minor sons to stay at the Holiday Inn with them." App. at 176. Generously interpreted this admission could imply that the hotel was perhaps somehow "guarding" or "overseeing" R.M.H. and thus in the hotel's care. On the other hand, in response to AMCO's motion for summary judgment Holiday Inn Express included the affidavit of R.M.H.'s mother, S.H., who declared in relevant part that when she gave her son permission to spend the night at Holiday Inn Express, "she intended and expected that he would be in the care and control of Amy McGinnis during the time that he was at the hotel." App. at 181-82 (citing

Affidavit of S.H. para. 5); and that "[a]t no time prior to May 17, 2007, did S.H. speak to or otherwise communicate with any employee or agent of the Holiday Inn Express to request that any hotel employee provide care for R.M.H. while he was at the hotel." App. at 182 (citing Affidavit of S.H. para. 6). Although not dispositive of whether the hotel in fact undertook the care of R.M.H., S.H.'s affidavit at least shows that his mother never contemplated as much.

At most there was no evidence presented to the trial court either way on the question of whether Holiday Inn Express engaged in "[t]he function of watching, guarding, or overseeing" R.M.H. At the very least the facts that were presented to the trial court on the question suggest competing inferences. In either event Holiday Inn Express is not entitled to summary judgment on this issue. I would reverse and remand for further proceedings.[11]

---

[11] I agree with the Court of Appeals that an "occurrence" took place for the purpose of the insured's insurance policy. See Holiday Hospitality, 955 N.E.2d at 832. And therefore I would summarily affirm this portion of the Court of Appeals' opinion.