

FILED

Jun 19 2019, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen C. Wheeler
Smith Fisher Maas Howard & Lloyd, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

P. Gregory Cross
The Cross Law Firm, P.C.
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Auto-Owners Insurance Company,

*Appellant,*

v.

Travis Shroyer,

*Appellee.*

June 19, 2019

Court of Appeals Case No. 18A-CT-1330

Appeal from the Henry Circuit Court

The Honorable Bob A. Witham, Judge

Trial Court Cause No. 33C01-1407-CT-22

**Pyle, Judge.**

# Statement of the Case

Brena Berardicelli ("Berardicelli"), on behalf of her three-year-old son ("J.B."), filed a complaint for damages, alleging that Travis Shroyer ("Shroyer") caused injuries to J.B. by negligently operating a skid loader on his premises. Shroyer's homeowner's insurance company, Auto-Owners Insurance Company ("Auto-Owners"), denied coverage for the accident as well as any duty to indemnify or defend Shroyer.

Shroyer brought an insurance coverage declaratory judgment action requesting Auto-Owners indemnify and defend him pursuant to the Personal Liability Protection Coverage under his homeowner's insurance policy (the "Policy"). In response, Auto-Owners filed a motion for summary judgment alleging that it had no duty to indemnify or defend Shroyer's liability claims because the undisputed evidence demonstrates that J.B. was an "insured" under the Policy and that, as a matter of law, the coverage for bodily injury to J.B. was excluded. The trial court denied Auto-Owners' motion for summary judgment.

On appeal, Auto-Owners argues that the trial court erred in denying the motion and that it was entitled to summary judgment as a matter of law because J.B. qualifies as an "insured" under the Policy. Concluding that J.B. was an "insured" as defined in the Policy at the time of the accident, we reverse the denial of summary judgment and remand to the trial court to enter judgment in favor of Auto-Owners.

We reverse and remand.

# Issue

Whether the trial court erred in denying summary judgment to Auto-Owners.

# Facts

Beginning in the summer of 2013 until April 2014, Berardicelli and her two sons resided with Shroyer at his residence. Berardicelli and Shroyer were "together" and shared a bedroom at the residence. (App. Vol. 2 at 194). On April 26, 2014, Shroyer moved a Caterpillar skid loader out of his barn. Shroyer planned to use the skid loader to move stone, put in a garden, and do some other landscaping. At some point, Shroyer "thought he had backed over the pile of dirt he had just left behind him, but got off the machine to check and noticed [J.B.'s] battery operated four-wheeler under the machine and [J.B.] laying on the ground injured." (App. Vol. 2 at 183). As a result, J.B. suffered serious injuries.

Property-Owners Insurance Company, which is an affiliate of Auto-Owners, insured Shroyer. The Policy identifies the insured premises as Shroyer's residence, which was the location of the accident. The Policy provides personal liability coverage with limits of $500,000 for each occurrence. The Policy provides liability coverage as follows:

> **Coverage E – Personal Liability**. **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

\* \* \*

>We will settle or defend, as we consider appropriate, any claim or suit for damages covered by this policy. We will do this at our expense, using attorneys of our choice. This agreement to settle or defend claims or suits ends when we have paid the limit of our liability.

(App. Vol. 2 at 145, 146) (emphasis in original). Furthermore, the Policy contains certain exclusions from liability coverage:

>Coverage E – Personal Liability does not apply:
>>\* \* \*
>(6) to bodily injury or personal injury to any insured.

(App. Vol. 2 at 148) (emphasis in original). The Policy defines "bodily injury" as "physical injury, sickness or disease sustained by a person including resulting death of that person." (App. Vol. 2 at 128). The Policy defines "occurrence" as "an accident that results in bodily injury or property damage and includes, as one occurrence, all continuous or repeated exposure to substantially the same generally harmful conditions." (App. Vol. 2 at 129) (emphasis in original).

[7] The Policy defines an "insured" as "any other person under the age of 21 residing with [the named insured] who is in [the named insured's] care . . . ." (App. Vol. 2 at 128) (emphasis omitted). The term "care" is not defined in the Policy. Additionally, separate and specific to the Personal Liability Protection section, an insured also means, with respect to any vehicle covered by the Policy, "any other person you permit to use the vehicle while on an insured premises." (App. Vol. 2 at 129) (emphasis in original).

[8] A few days after the accident, on April 29, 2014, Shroyer submitted a claim to Auto-Owners regarding the accident. Auto-Owners informed Shroyer that no coverage existed for the accident because J.B. "resided at the insured premises with his mother and Shroyer (and was an 'insured' under the Policy, thereby triggering certain Policy Exclusions)." (App. Vol. 2 at 109).

[9] In July 2014, Berardicelli, on behalf of J.B., filed the instant lawsuit ("the Lawsuit") against Shroyer, alleging that J.B. was injured on Shroyer's property by Shroyer's operation of a machine. Berardicelli later filed a "First Amended Complaint for Damages with Jury Demand" against Shroyer in August 2015. (App. Vol. 2 at 21). On October 9, 2015, Shroyer filed his answer. Auto-Owners continued to deny coverage for the accident.

[10] On March 14, 2016, Shroyer filed a "Third-Party Complaint on Insurance Contract" against Auto-Owners requesting that the trial court enter a declaratory judgment stating that Auto-Owners must defend and indemnify him in the Lawsuit. (App. Vol. 2 at 30). Auto-Owners answered on May 10, 2016.

[11] On October 9, 2017, Auto-Owners filed a "Motion for Summary Judgment and Designation of Evidence in Support Thereof." (App. Vol. 2 at 206). On the same date, Auto-Owners also filed a "Brief in Support of Motion for Summary Judgment." (App. Vol. 2 at 89). Auto-Owners argued that it has no duty to indemnify or defend Shroyer's liability claims because the undisputed evidence demonstrated that J.B. was an insured under the Policy and that as a matter of law, any coverage for bodily injury to J.B. was excluded.

[12] Auto-Owners designated several affidavits, exhibits, and depositions in support of its position. This evidence included testimony that Berardicelli was not employed, did not pay rent, and did not contribute to any household expenses or utilities. Shroyer "[t]old [her she] didn't have to" pay anything, and he took care of the expenses himself. (App. Vol. 2 at 194). In addition to providing money to Berardicelli, Shroyer purchased diapers and "necessities" for her two sons. (App. Vol. 2 at 202). Shroyer typically told Berardicelli if the sons needed to be disciplined; however, he "might have told them to sit in the timeout chair or something like that." (App. Vol. 2 at 204).

[13] In response, Shroyer filed his "Brief in Opposition to Motion for Summary Judgment" and designated evidence in support of his position that J.B. was not an insured under the Policy. Included in this evidence was Shroyer's own testimony that he was never involved in any of the decision-making regarding the various needs of the children. He also testified that he never watched them. Likewise, Berardicelli testified that when she had an errand to run, she "always had [the boys] with [her]." (App. Vol. 3 at 48). She also testified that she took care of the discipline and if an issue did arise, she would "take care of it." (App. Vol. 3 at 48). Furthermore, she stated that she provided food for her children through "food stamps[.]" (App. Vol. 3 at 57).

[14] The trial court held a hearing on Auto-Owners' motion for summary judgment and denied the motion. The trial court did not make any specific findings or conclusions regarding its denial of the motion. At the request of Auto-Owners,

the trial court certified its denial of summary judgment for interlocutory appeal, and our Court accepted jurisdiction.

## Decision

[15] Auto-Owners appeals the trial court's denial of summary judgment. Auto-Owners contends that J.B. was an "insured" under the Policy, resulting in the exclusion of any coverage for bodily injury to J.B. Auto-Owners presents two theories on appeal. First, Auto-Owners asserts that J.B. was in Shroyer's care, thus making him an insured under one definition in the Policy. Second, Auto-Owners argues that the accident and injuries arose out of J.B.'s use of a covered vehicle with Shroyer's permission on the insured premises, thus making him an insured under another separate definition in the Policy. Because the designated evidence shows that J.B. was in Shroyer's care and qualifies as an insured under the first theory, we need not address the merits of Auto-Owners' second theory.

[16] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014); Ind. Trial Rule 56(C). "Insurance policies are governed by the same rules of construction as other contracts. As with other contracts, the interpretation of an insurance policy is a question of law." *Briles v. Wasusau Ins. Companies*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006) (citations omitted). Further, the "[c]onstruction of a written contract is a question of law for which summary judgment is particularly appropriate." *Weidman v. Erie Ins.*

*Group*, 745 N.E.2d 292, 297 (Ind. Ct. App. 2001). And where the challenge to summary judgment raises questions of law, we review them de novo. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016).

[17] In ruling on a motion for summary judgment, not only all facts but also all "'reasonable inferences drawn from those facts are construed in favor of the nonmoving party.'" *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1289 (Ind. 2006) (quoting *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)). A party seeking appellate reversal of the denial of summary judgment must demonstrate that the designated evidentiary matter negates the existence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Cinergy Corp. v. Assoc. Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 574 (Ind. 2007).

[18] The parties do not dispute that Auto-Owners would not have to provide coverage for bodily injury if J.B. was an "insured." Instead, they dispute the existence of a genuine issue of material fact as to whether J.B. was an insured under the Policy by virtue of being in Shroyer's "care." Although the term "care" is undefined in the Policy, the Indiana Supreme Court has previously reviewed the definition of "care" as used in an insurance policy. In *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574 (Ind. 2013), a minor was molested at a hotel by a hotel employee. The minor's parents were not at the hotel, and the minor was staying in a room rented to his friend's mother. The hotel's insurance policy excluded coverage for molestation "by

anyone of any person while in the care, custody or control of the insured." *Id.* at 576. The phrase "care, custody, or control" was not defined in the policy.

[19] In discerning the meaning of "care" as used in an insurance policy, the court noted that the dictionary definition of "care" was defined as "[t]he function of watching, guarding, or overseeing." *Id.* at 579 (citing Webster's II New College Dictionary 168 (1995)). Using this definition, the supreme court focused on the child's status and held that the child was in the hotel's "care" for purposes of the insurance policy, as it was undisputed that the minor was molested by a hotel employee while he was a guest at the hotel, was staying in a room rented to the mother of his friend, and was in the room behind a locked door when the employee entered and molested him.

[20] Turning to this case, when we focus on the child's status, as did our supreme court in *Holiday Hospitality*, we conclude that J.B. was an insured under the Policy at the time of the accident. As defined in the Policy, an insured means "any other person under the age of 21 residing with [the named insured] who is in [the named insured's] care . . . ." (App. Vol. 2 at 128) (emphasis omitted). It is undisputed that J.B., three years old at the time, was under the age of 21 and was residing with Shroyer. Both Shroyer and Berardicelli testified about J.B.'s age and that J.B., his brother, and Berardicelli lived with Shroyer at the insured premises from the summer of 2013 until April 2014.

[21] It is also undisputed that Berardicelli did not work while living with Shroyer and was not responsible for paying rent, sharing in any of the utilities, or

household expenses because Shroyer "[t]old [her she] didn't have to." (App. Vol. 2 at 194). Rather, Shroyer took care of the expenses himself and provided Berardicelli with money because they "were together." (App. Vol. 2 at 194). Further, Shroyer purchased a vehicle for Berardicelli and paid for its maintenance and gas. Shroyer testified that he provided diapers and other "necessities" for J.B. and his brother. (App. Vol. 2 at 202). Although Shroyer would typically tell Berardicelli if the brothers needed to be disciplined, he "might have told them to sit in the timeout chair or something like that." (App. Vol. 2 at 204). Thus, by providing a place to live, transportation, financial support, and other necessities, Shroyer engaged in "the function of watching, guarding, or overseeing[]" the various needs and overall well-being of J.B. *See Holiday Hospitality*, 983 N.E.2d at 579.

[22] Shroyer's argument that Berardicelli possessed the "sole responsibility" concerning the watching, guarding or overseeing of J.B. is unconvincing. (Shroyer's Br. 18). The concept of "care" is not a mutually exclusive concept. *See, e.g.*, *Holiday Hospitality*, 983 N.E.2d at 580-581 (holding that hotel guest molested by hotel employee was under the "care, custody or control" of the hotel, within the meaning of a similar insurance coverage exclusion, despite also being in the care of his friend's mother). Although J.B. was in the care of his mother Berardicelli, he was still, as a matter of law, in Shroyer's care.

[23] Auto-Owners has demonstrated that the designated evidence negates the existence of any genuine issue of material fact and is entitled to judgment as a matter of law. Thus, under the Policy, J.B. was an insured at the time of the

accident and any coverage for bodily injury to J.B. is excluded. Accordingly, we reverse the trial court's denial of summary judgment and remand with instructions to grant summary judgment in favor of Auto-Owners.

[24] Reversed and remanded.

Najam, J., and Altice, J., concur.