ATTORNEYS FOR APPELLANT

J. Blake Hike
Larry L. Barnard
Carson LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Dustin F. Fregiato
Ladendorf Law
Indianapolis, Indiana



FILED

Aug 17 2020, 9:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Progressive Southeastern
Insurance Company,

*Appellant-Defendant*,

v.

Robert Chastain,

*Appellee-Plaintiff*.

August 17, 2020

Court of Appeals Case No.
20A-CT-876

Appeal from the Marion Superior
Court

The Honorable Kurt Eisgruber,
Judge

Trial Court Cause No.
49D06-1901-CT-4289

**Brown, Judge.**

[1] Progressive Southeastern Insurance Company ("Progressive") appeals the trial court's entry of summary judgment in favor of Robert Chastain and against it. We reverse.

## Facts and Procedural History

[2] On November 9, 2018, Chastain was the registered owner of a 2015 Kymco Scooter bearing VIN LC2U2A021FC200649. On that day, while operating a 2017 Bashan Scooter bearing VIN LEHTCB15XHR000095, Chastain was involved in an accident in Indianapolis with a vehicle driven by Rafael Zuniga. Chastain had been the owner of the 2017 Bashan Scooter for more than thirty days and had not registered the scooter with the Bureau of Motor Vehicles. Prior to the accident, Chastain moved the license plate from the Kymco Scooter to the Bashan Scooter but "had not officially switched the plate over with the Bureau of Motor Vehicles." Appellant's Appendix Volume II at 98. In a letter dated December 17, 2018, Zuniga's insurer, Safe Auto Insurance, indicated to Chastain's counsel that it was tendering the policy limits of $25,000 on behalf of Zuniga. At some point, Chastain filed a claim against his insurer, Progressive, and in a letter dated January 9, 2019, Progressive informed Chastain: "As you were driving a moped that you were the owner of at the time of the accident, based on the policy, we must respectfully deny underinsured bodily injury coverage . . . ." *Id.* at 177.

At the time of the accident, Chastain was insured under an auto insurance policy (the "Policy"), which listed a 2002 Jeep Liberty, a 1998 Damion Motor Coach Hornet, and a 1999 Dodge Ram Pickup.[1] Under the heading "GENERAL DEFINITIONS," the Policy states:

> 2. "**Auto**" means a land motor vehicle:
>     a. of the private passenger, pickup body, or cargo van type;
>     b. designed for operation principally upon public roads;
>     c. with at least four wheels; and
>     d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
>
> However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

*Id.* at 108. The Policy did not include a definition for motor vehicle under the heading "GENERAL DEFINITIONS." *Id.* The Policy provides:

## PART I – LIABILITY TO OTHERS

\* \* \* \* \*

> If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

---

[1] The policy states: "Your coverage began on November 10, 2018 at 12:01 a.m." Appellant's Appendix Volume II at 102. In its brief on appeal, Progressive notes: "Chastain had a previous Progressive insurance policy that lapsed on November 1, 2018. On November 9, 2018, before the Accident occurred, Chastain paid the premium for the Policy. While the Policy's declarations page indicates a policy period that began on November 10, 2018, and while the November 9, 2018 premium payment would not technically have initiated coverage until 12:01 am on November 10, 2018, Progressive agreed to treat the Accident as having occurred within the policy period for the Policy." Appellant's Brief at 9 n.1.

* * * * *

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

* * * * *

12. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

* * * * *

14. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

* * * * *

**PART II – MEDICAL PAYMENTS COVERAGE**

* * * * *

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:

1. sustained by an **insured person**; and

2. caused by that **motor vehicle** accident.

**ADDITIONAL DEFINITIONS**

When used in this Part II:

* * * * *

3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

* * * * *

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II will not apply to **bodily injury**:

\* \* \* \* \*

9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

*Id.* at 110-115.

[4]     The Policy also provides:

**PART III – UNINSURED/UNDERINSURED MOTORIST COVERAGE**

\* \* \* \* \*

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

\* \* \* \* \*

**ADDITIONAL DEFINITIONS**

When used in this Part III:

1. "**Insured person**" means:

a. **you**, a **relative**, or a **rated resident**;

b. any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;

c. any person **occupying**, but not operating, a **covered auto**; and

d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.

* * * * *

3. "**Underinsured motor vehicle**" means a land motor vehicle or trailer to which a **bodily injury** liability bond or policy applies at the time of the accident, but the sum of the limits of liability for **bodily injury** under all applicable policies or bonds:

a. is less than the coverage limit for Uninsured/Underinsured Motorist Bodily Injury Coverage shown on the **declarations page**; or

b. has been reduced by payments for **bodily injury** to persons injured in the accident such that the amount actually received by an **insured person** is less than the per person coverage limit for Uninsured/Underinsured Motorist Bodily Injury Coverage shown on the **declarations page**.

An "**underinsured motor vehicle**" does not include any vehicle or equipment:

a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;

* * * * *

**EXCLUSIONS** – **READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:

1. to **bodily injury** sustained by any person while using or **occupying**:

\* \* \* \* \*

b. a motor vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III;

*Id.* at 117-119.

[5] On January 31, 2019, Chastain filed a complaint for damages and declaratory relief against Progressive and Zuniga. He requested the court to enter a declaratory judgment regarding the benefits of the Policy's underinsured motorist coverage. On February 26, 2019, Progressive filed a counterclaim for declaratory judgment.

[6] On August 16, 2019, Progressive filed a motion for summary judgment and asserted that it was entitled to summary judgment because there was no genuine issue of material fact that the Policy excluded underinsured motorist coverage for bodily injury where Chastain was using a motor vehicle he owned but which was not insured under the Policy. On December 10, 2019, Chastain filed a motion for summary judgment and asserted his use of the scooter "did not constitute the use of a motor vehicle under the terms" of the Policy and that Progressive must provide him with "the underinsured motorist liability benefits." *Id.* at 154. In his brief in support of his motion, Chastain asserted he suffered severe bodily injuries as a result of the accident and Progressive was obligated to compensate damages above Zuniga's liability insurance limits.

[7]     On March 27, 2020, the court denied Progressive's motion for summary judgment and granted Chastain's motion for summary judgment. Specifically, the court's order found:

## I.  FINDINGS OF FACT

1.  Robert Chastain ("Chastain") is the named insured in a personal automobile insurance policy ("policy") issued by Progressive Southeastern Insurance Company ("Progressive").

2.  The policy lists a 2002 Jeep Liberty and a 1999 Dodge Ram as covered autos.

3.  Part III of the policy provides Chastain Uninsured/Underinsured Motorist ("UIM") Coverage for bodily injury arising out of an accident with an underinsured motor vehicle.

4.  The UIM portion of the policy contains the following exclusion:

> Coverage under this Part III will not apply:
>
> 1.  to bodily injury sustained by any person while using or occupying:
>
> . . . .
>
> b.  a **motor vehicle** that is owned by or available for the regular use of you, a relative, or a rated resident.  This exclusion does not apply to a covered auto that is insured under this Part III [emphasis added];[2]

---

[2] Bracketed text appears in the trial court's order.

5. In addition, the policy also contains the following exclusion under the UIM coverage:

> 2. to bodily injury sustained by you, a relative, or a rated person while using **any vehicle**, other than a covered auto, without the permission of the owner of the vehicle or in lawful possession of the vehicle [emphasis added];

6. The policy contains the following exclusion under Part I, Liability coverage:

> Coverage under this Part I, including our duty to defend, will not apply to any insured person for:
>
> . . . .
>
> 12. bodily injury or property damage arising out of the ownership, maintenance or use of **any vehicle** owned by you or furnished or available for your regular use, other than a **covered auto** for which this coverage has been purchased [emphasis added].

7. The policy also contains the following exclusion under the Liability exclusion:

> 14. bodily injury or property damage arising out of your, a relative's, or a rated person's use of a **vehicle**, other than a covered auto, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle [emphasis added];

5.[3] On November 9, 2018, Plaintiff sustained bodily injuries in an accident with an underinsured motorist while driving on Washington Street, in Indianapolis, Indiana.

---

[3] It appears that the trial court misnumbered the findings.

6. Plaintiff was not using a covered auto at the time of the accident. He was using a 2017 Bashan Scooter ("the scooter") which he owned, but, was not listed as covered auto in the policy.

7. The scooter was motorized and should have been registered with the Indiana Bureau of Motor Vehicles as a Class B Motor Driven Cycle. Instead, Plaintiff had switched a license plate from a "Kymco Scooter" he owned, to the scooter, but had not officially registered the scooter with the Bureau of Motor Vehicles.

8. Plaintiff had a valid Indiana State Identification Card that was endorsed with a Motor Driven Cycle – Class B Endorsement at the time of accident.

9. For purposes of Part II, Medical Payments Coverage, only, "motor vehicle" is defined as "a land motor vehicle designed for use principally on public roads." (Exh. C, numbered p. 7.) Part III of the policy, the UIM coverage does not define either "motor vehicle" or "vehicle".

## II. DISCUSSION

* * * * *

The Indiana Legislature defines a motor vehicle (see I.C. § 9-13-2-105(a)) which it distinguishes from a Class B Motor Driven Cycle (see I.C. § 9-13-2-26.5). The Plaintiff's scooter is likely classified as a Class B Motor Driven Cycle as his Kymco Scooter was. Reasonable people may agree that a scooter is a motor vehicle. However, reasonable people would also agree that the Progressive policy in this instance is ambiguous as to what is excluded within the UIM section of the policy.

As mentioned, "vehicle" is not defined in the policy. "Motor vehicle" is defined only in Part II, the Medical Payments Coverage portion of the policy as a "land motor vehicle designed for use principally on public roads." Even if the definition were

applicable, it is not helpful. According to the definition, a "motor vehicle" is a "land motor vehicle" which does not clarify the ambiguity.

Both the Liability exclusions (paragraphs 12 and 14) and UIM exclusions (paragraphs 1 and 2) mention "vehicle" and "motor vehicle" in similarly worded paragraphs. However, the Liability exclusion paragraph 12 and 14 exclude the use of "any vehicle" other than a covered auto. UIM exclusion paragraph 2 excludes use of "any vehicle" but paragraph 1 excludes the use of any "motor vehicle." The wording of the policy suggests different meanings. A "vehicle" may be more broadly defined than a "motor vehicle," or not. Regardless, it begs the question. Is a scooter a "vehicle" for purposes of the policy? Or is a scooter more narrowly defined as a "motor vehicle?" Reasonable people may disagree. Ambiguous terms in an insurance policy are to be construed against the insurer. *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996)[, *reh'g denied*]. "This is particularly true where a policy excludes coverage." *Id.*

### III. CONCLUSIONS

1. An insurer has the right to limit its coverage of risks and its liability, and in so doing may impose exceptions, conditions, and exclusions upon its contractual obligations.

2. As the drafter of their policies, any ambiguity in the contract will be construed against the insurance company.

3. The undefined terms "vehicle" and "motor vehicle" contained in the Plaintiff's UIM portion of his Progressive policy in effect on the date of any injuries he sustained on November 9, 2018, are ambiguous.

4. Plaintiff's claim for underinsured motorist liability benefits relating to the November 9, 2018 incident is not excluded under the UIM part of his Progressive policy.

5. Progressive is obligated to consider compensating Plaintiff's injuries under the UIM coverage of his policy.

*Id.* at 6-9.

## *Discussion*

[8] The issue is whether the trial court erred in denying Progressive's motion for summary judgment and granting Chastain's motion for summary judgment. Progressive argues the court erroneously determined that the exclusion contained in the Policy's uninsured/underinsured motorist coverage ("UIM") provision was ambiguous with regard to whether the Bashan Scooter operated by Chastain constituted a motor vehicle within the meaning of the UIM provision. It asserts that the Bashan Scooter was a "motor vehicle" within the meaning of the UIM exclusion and there is no coverage for any claim by Chastain arising out of the motor vehicle accident. Appellant's Brief at 15. It asserts that the Bashan Scooter falls under the definition of motor vehicle under Indiana statute, the dictionary definition, and Indiana case law.

[9] Chastain points to the Policy's definition of "Auto" and asserts that, "[a]s [his] scooter was not four wheels, [he] was reasonable in believing that the scooter did not meet the Policy's definition of an 'Auto,'" and that "based upon the Policy's definition of 'Auto,' which requires it to have 4 wheels, it was reasonable for [him] to believe that he couldn't even insure his Scooter under the Policy even if he wanted to." Appellee's Brief at 15. He also argues that the

term "motor vehicle" used in Part III is ambiguous and must be construed against Progressive.

[10] In reply, Progressive argues that whether the scooter was an "auto" within the meaning of the Policy is entirely irrelevant to the determination of whether the phrase "motor vehicle" in the UIM exclusion is ambiguous. Appellant's Reply Brief at 7. It also asserts that it is disingenuous for Chastain to assert that he would have no reason to believe the Bashan Scooter was a motor vehicle where, "[n]ot only was he required to register the Bashan Scooter (something his actions indicate he knew), but he was required to register the Bashan Scooter, a class B motor driven cycle, with the Indiana Bureau of *Motor Vehicles*." *Id.* at 9.

[11] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973

(Ind. 2001). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cty.*, 779 N.E.2d 1, 3 (Ind. 2002). Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*.

[12] "Insurance policies are contracts 'subject to the same rules of judicial construction as other contracts.'" *Id.* at 630 (quoting *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016)). When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning. *Id.* By contrast, courts may construe – or ascribe meaning to – ambiguous policy terms only. *Id.*

[13] "'[F]ailure to define a term in an insurance policy does not necessarily make it ambiguous' and thus subject to judicial construction." *Id.* (quoting *Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009)). Further, "failing to define a policy term merely means it has no exclusive special meaning, and the courts can interpret it." *Id.* "[P]arties to an insurance contract may not invite judicial construction by creating ambiguity." *Id.* They may not make a term ambiguous by simply offering different policy interpretations. *Id.* "In other words, ambiguity does not arise from mere disagreement over a policy term's meaning – that is, where 'one party asserts an interpretation contrary to that asserted by the opposing party.'" *Id.* (quoting *Wagner*, 912 N.E.2d at 810).

"Rather, insurance policy provisions are ambiguous only if they are 'susceptible to more than one **reasonable** interpretation.'" *Id.* (quoting *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 578 (Ind. 2013)) (emphasis added in *Erie*).

[14] "When evaluating alleged ambiguities – whether there exist two reasonable interpretations for one policy term – courts read insurance policies 'from the perspective of . . . ordinary policyholder[s] of average intelligence.'" *Id.* (quoting *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246-247 (Ind. 2005)). "If reasonably intelligent policyholders would honestly disagree on the policy language's meaning, then we will find the term ambiguous and subject to judicial construction." *Id.* "Conversely, if reasonably intelligent policyholders could not legitimately disagree as to what the policy language means, we deem the term unambiguous and apply its plain ordinary meaning." *Id.*

[15] We note that Ind. Code § 27-7-5-5(b), which governs limitations on underinsured motorist coverage provides:

> When the coverage specified in this chapter is written to apply to one (1) or more motor vehicles under a single automobile liability policy, such coverage applies only to the operation of those motor vehicles for which a specific uninsured or underinsured motorist premium charge has been made and does not apply to the operation of any motor vehicles insured under the policy or owned by the named insured for which a premium charge has not been made.

Thus, the exclusion in the Policy was allowed under Indiana law. *See Progressive Paloverde Ins. v. Arnold*, 16 N.E.3d 993, 997 (Ind. Ct. App. 2014) (holding the insured "did not qualify as insured under this policy for liability purposes while operating a motorcycle he owned but did not insure through [insurer]," and "[t]herefore, his policy's uninsured motorist coverage exclusion regarding use of an owned, uninsured auto is not contrary to public policy"), *trans. denied*;[4] *Veness v. Midland Risk Ins. Co.*, 732 N.E.2d 209, 213 (Ind. Ct. App. 2000) (holding that Ind. Code § 27-7-5-5(b) "expressly permits an exclusion from UIM coverage for the operation of a motor vehicle insured under the policy or owned by the named insured for which a premium charge has not been made").

[16]   Part II of the Policy defines "[m]otor vehicle" as a "land motor vehicle designed for use principally on public roads," but this definition is preceded by the phrase "[w]hen used in this Part II." Appellant's Appendix Volume II at 114. Even assuming the definition of "motor vehicle" in Part II does not apply to Part III, we conclude that reversal is warranted.

---

[4] In *Arnold*, the court held: "[L]anguage in an insurance policy which limits or diminishes the protection required by the uninsured motorist statute is contrary to public policy only if it specifically limits uninsured motorist protection as to [a] person who would otherwise qualify as insured for liability purposes." *Arnold*, 16 N.E.3d at 997 (quoting *Jackson v. Jones*, 804 N.E.2d 155, 161 (Ind. Ct. App. 2004)). The court observed that the insured's policy contained similar exclusions in both the liability and uninsured motorist sections for an owned, uninsured vehicle. *Id.* As noted above, the Policy here also contained exclusions in Parts I and II that were similar to the exclusion in Part III, which governs underinsured motorist coverage.

[17] While the general definitions section and Part III of the Policy do not define "motor vehicle," a motor vehicle is generally defined as "[a] self-propelled wheeled conveyance, such as a car or truck, that does not run on rails." AMERICAN HERITAGE DICTIONARY 1148 (4th ed. 2006). It is also defined as "[a] wheeled conveyance that does not run on rails and is self-propelled, esp. one powered by an internal-combustion engine, a battery or fuel-cell, or a combination of these." BLACK'S LAW DICTIONARY 1788 (10th ed. 2014). We find that the Bashan Scooter, which had a vehicle identification number and to which Chastain had attached a license plate without registering it with the Bureau of Motor Vehicles, falls under the plain and ordinary meaning of a motor vehicle.

[18] We also note that, at the time of the accident, Ind. Code § 9-13-2-105(a) provided that a "[m]otor vehicle" means "a vehicle that is self-propelled. The term does not include a farm tractor, an implement of agriculture designed to be operated primarily in a farm field or on farm premises, or an electric personal assistive mobility device."[5] (Subsequently amended by Pub. L. No. 142-2019, § 2 (eff. July 1, 2019); Pub. L. No. 206-2019, § 8 (eff. July 1, 2019); Pub. L. No. 211-2019, § 7 (eff. July 1, 2019); Pub. L. No. 120-2020, § 11 (eff. July 1, 2020)). To the extent the trial court stated that the "[t]he Indiana Legislature defines a

---

[5] Subsection (b) of Ind. Code § 9-13-2-105 provided that "'[m]otor vehicle,' for purposes of IC 9-21[, which governs traffic regulation], means: (1) a vehicle that is self-propelled; or (2) a vehicle that is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." Subsection (c) provided that "'[m]otor vehicle', for purposes of IC 9-32, [which governs dealer services,] includes a semitrailer, trailer, or recreational vehicle."

motor vehicle (see I.C. § 9-13-2-105(a)) which it distinguishes from a Class B Motor Driven Cycle (see I.C. § 9-13-2-26.5)," Appellant's Appendix Volume II at 8, we disagree. At the time of the accident, Ind. Code § 9-13-2-26.5 provided in part that a "'[c]lass B motor driven cycle' means a *motor vehicle* . . . ." (Emphasis added).[6] Ind. Code §§ 9-13-2-105 and 9-13-2-26.5 support the conclusion that Chastain's scooter was a motor vehicle.[7]

[19] We conclude that the term "motor vehicle" under the Policy is unambiguous. The designated evidence reveals that the 2017 Bashan Scooter was a motor vehicle owned by or available for Chastain's regular use. Accordingly, underinsured motorist coverage was excluded under Part III of the Policy which states that "[c]overage under this Part III will not apply: 1. to **bodily**

---

[6] In its entirety, Ind. Code § 9-13-2-26.5 provided:

"Class B motor driven cycle" means a motor vehicle that:

    (1) has a seat or saddle for the use of the rider;
    (2) is designed to travel on not more than three (3) wheels in contact with the ground;
    (3) complies with applicable motor vehicle equipment requirements under IC 9-19 and 49 CFR 571;
    (4) has a cylinder capacity not exceeding fifty (50) cubic centimeters; and
    (5) is registered as a Class B motor driven cycle under IC 9-18 (before its expiration) or IC 9-18.1.
The term does not include an electric personal assistive mobility device.

The statute was subsequently amended to provide in part that "[t]he term does not include an electric personal assistive mobility device or an electric bicycle." *See* Pub. L. No. P.L.206-2019, § 2 (eff. July 1, 2019).

[7] To the extent Chastain asserts that Indiana law allows him to operate a scooter under different conditions than a traditional car, truck, or motorcycle, and asserts that "for purposes of IC 9-5 [Financial Responsibility], the term 'motor vehicle' does not include a Class B motor driven cycle (i.e. Chastain's scooter),'" Appellee's Brief at 16 (quoting Ind. Code § 9-13-2-105 (2015)), we note that he cites a version of Ind. Code § 9-13-2-105, which was not in effect at the time of the Policy.

**injury** sustained by any person while using or **occupying** . . . a motor vehicle that is owned by or available for the regular use of **you**, a **relative** or a **rated resident**." Appellant's Appendix Volume II at 119.

[20] For the foregoing reasons, we reverse the trial court's denial of Progressive's motion for summary judgment and grant of Chastain's motion for summary judgment.

[21] Reversed.

Najam, J., and Kirsch, J., concur.