ATTORNEYS FOR APPELLANT
J. Christopher Janak
Paul D. Vink
Stephen C. Unger
Daniel L. Taylor
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
INDIANA ASSOCIATION OF CITIES & TOWNS AND
INDIANA MUNICIPAL LAWYERS ASSOCIATION
Bette J. Dodd
Joseph P. Rompala
Jo A. Woods
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Alan M. Hux
Gayle A. Reindl
John D. Papageorge
Mark J. Crandley
Nicholas K. Kile
Indianapolis, Indiana



FILED
Nov 22 2011, 1:26 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 32S05-1104-PL-217

TOWN OF AVON,

*Appellant (Defendant below),*

v.

WEST CENTRAL CONSERVANCY DISTRICT,
WASHINGTON TOWNSHIP, AND RONNIE
AUSTIN, IN HIS OFFICIAL CAPACITY AS
TRUSTEE AND PARK GOVERNOR,

*Appellees (Plaintiffs below).*

Appeal from the Hendricks Superior Court, No. 32D04-0810-PL-40
The Honorable Mark A. Smith, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 32A05-1003-PL-00149

**November 22, 2011**

**Shepard, Chief Justice.**

We consider here whether the White Lick Creek Aquifer is a "watercourse" under Indiana law and, if so, whether the Home Rule Act permits the Town of Avon to regulate another political unit's attempt to withdraw water from the aquifer. We answer both questions in the affirmative, and further conclude that the Town of Avon's proposed regulation is not preempted by statutes authorizing the Department of Natural Resources to regulate aquifers.

**Facts and Procedural History**

Washington Township and the West Central Conservancy District (WCCD) both own real property within the corporate boundaries of the Town of Avon. The Township owns a local community park, and WCCD owns 100 acres of land;[1] their properties overlay an underground water supply known as the White Lick Creek Aquifer. As early as 2005, the Township and WCCD started exploring the possibility of drilling wells into the Aquifer in order to withdraw water and sell it to third parties.

In 2008, Avon passed Ordinance No. 2008-8, which purports to exercise Avon's "power to establish, maintain, control, and regulate the taking of water, or causing or permitting water to escape, from a watercourse both inside and within ten (10) miles of the Town's municipal limits."[2] (Appellant's App. at 11, 408.) The ordinance prohibits taking water from a

---

[1] Some of WCCD's land is outside Avon's municipal limits, but within a ten-mile range of those limits. (Appellant's App. at 386.)

[2] All parties spill a good deal of ink arguing Avon's motives (both overt and ulterior) in enacting the ordinance, as well as the validity of the asserted rationales. However, "[t]he rule is firmly settled in this State, that the courts will not inquire as to the reasonableness of an ordinance when power exists to pass it." Skaggs v. City of Martinsville, 140 Ind. 476, 478, 39 N.E. 241, 242 (1894). Nor will we "inquire into the motives of members of a municipal council for the purpose of determining the validity of ordinances which are not contractual, but wholly legislative in character." Gardiner v. City of Bluffton, 173 Ind. 454, 460, 89 N.E. 853, 855 (1909). Here, the question presented is not why Avon passed the ordinance, or

2

watercourse for "retail, wholesale, or other mass distribution" unless done by or on behalf of Avon. (Appellant's App. at 11, 408.) The ordinance defines a watercourse as including "lakes, rivers, streams, groundwater, aquifers, and/or any other body of water whether above or below ground." (Appellant's App. at 12, 408.) Avon has relied on several Indiana Code sections governing a political unit's powers with respect to watercourses (the "Watercourse Statutes").[3]

The Township and WCCD subsequently filed complaints challenging the ordinance's validity under Indiana's Home Rule Act.[4] Cross-motions for summary judgment followed. After a hearing, the trial court granted summary judgment for the Township and WCCD,[5] and denied summary judgment for Avon. Avon appealed.

The Court of Appeals affirmed, concluding that summary judgment for the Township and WCCD was appropriate. Town of Avon v. W. Cent. Conservancy Dist., 937 N.E.2d 366 (Ind. Ct. App. 2010). We granted transfer, Town of Avon v. W. Cent. Conservancy Dist., 950 N.E.2d 1205 (Ind. 2011) (table), vacating that opinion. We now reverse.

---

whether it was wise to do so; the question is whether the ordinance is valid with respect to the Aquifer, the Township, and WCCD.

[3] Ind. Code §§ 36-9-2-8 to -13 (2007). Specifically, the ordinance cites Sections 36-9-2-8 and 36-9-2-10. (Appellant's App. at 11, 407.)

[4] Ind. Code §§ 36-1-3-1 to -9 (2007).

[5] The trial court denied WCCD's motion with respect to Count V of WCCD's complaint. (Appellant's App. at 32.) That denial was not made part of this appeal.

**Standard of Review**

Summary judgment is appropriate when the moving party demonstrates that there are no genuine issues of material fact with respect to a given issue or element of a claim. Ind. Trial Rule 56(C); Dugan v. Mittal Steel USA, Inc., 929 N.E.2d 184 (Ind. 2010). Once the moving party satisfies this burden, the non-moving party must designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267 (Ind. 2009). A court must construe all designated evidence and reasonable inferences in favor of the non-moving party, and resolve all doubts against the moving party. Id.

On appellate review of a grant or denial of summary judgment, we examine the same framework. Where the facts are undisputed and the dispute is only as to a matter of law, our review is de novo. Freidline v. Shelby Ins. Co., 774 N.E.2d 37 (Ind. 2002). We reverse if the law has been incorrectly applied to the facts. Wagner v. Yates, 912 N.E.2d 805 (Ind. 2009).

## I.    Is the White Lick Creek Aquifer a "Watercourse"?

All parties agree that a critical determination in this case is whether the White Lick Creek Aquifer is a "watercourse" for the purposes of Indiana law.

Some time back, we defined a watercourse to mean "a channel cut through the turf by the erosion of running water, with well-defined banks and bottom, and through which water flows, and has flowed immemorially, not necessarily all the time, but ordinarily, and permanently for substantial periods of each year." N.J., Ind. & Ill. R.R. Co. v. Tutt, 168 Ind. 205, 211, 80 N.E. 420, 422–23 (1907). The Court of Appeals has observed that the determination of whether a particular body of water is a watercourse is based on the applicable facts. See, e.g., Birdwell v. Moore, 439 N.E.2d 718, 721 (Ind. Ct. App. 1982). No particular fact is immediately conclusive in the determination, including whether the watercourse has a defined bed and banks. See id.

4

What we examine most closely is the substantial existence, unity, regularity, and dependability of the water's flow along a distinguishable course. See Long v. IVC Indus. Coatings, Inc., 908 N.E.2d 697 (Ind. Ct. App. 2009).

The Indiana Code does provide that the term watercourse "includes lakes, rivers, streams, and any other body of water." Ind. Code § 36-9-1-10 (2007). The parties disagree as to whether an aquifer may be properly categorized as "any other body of water" under this definition. Avon contends that the word "any" dictates an expansive scope for this provision, and the provision applies to "'each,' 'every,' and 'all' bodies of water, wherever located." (Appellant's Br. at 12.) If true, this definition would include all aquifers.

The Township and WCCD, on the other hand, urge that we apply the doctrine of ejusdem generis in interpreting this provision. (Appellee Township's Br. at 20–21; Appellee WCCD's Br. at 21.) For example, WCCD argues that "any other body of water" means "only those bodies of water that 'are of like kind . . . to those designated by the specific words,' that is, bodies of water that, like lakes, rivers, and streams, have defined banks, a bottom, and a channel—such as, for example, brooks or creeks." (Appellee WCCD's Br. at 23.)

We think that Avon's suggested interpretation paints with too broad a brush. This interpretation would blur, and possibly wash away, the legal line between watercourses and bodies of surface water—a line to which Indiana courts have consistently held. See, e.g., Tutt, 168 Ind. at 210–11, 80 N.E. at 423 (comparing mere surface water, even when gathered in channels and conveyed away, with a watercourse); see also Birdwell, 439 N.E.2d at 721 (common enemy doctrine applies to surface water but not water in a watercourse). We therefore concur with the analytical approach taken by the Township and WCCD, although we think it leads to a different conclusion.

A proper application of ejusdem generis would interpret "any other body of water" as including "things as are of like kind or class to those designated by the specific words." Drake v. Mitchell Cmty. Sch., 649 N.E.2d 1027, 1030 (Ind. 1995) (quoting Thompson v. Thompson, 259

5

Ind. 266, 275–76, 286 N.E.2d 657, 662–63 (1972)). Here, that "class" is "watercourses." Those watercourses specifically designated by the statute are "lakes, rivers, [and] streams." Ind. Code § 36-9-1-10. For questions such as the one before us, we think this leads to examination of the characteristics (like defined boundaries, flow, and historic existence) of the listed items as compared to those of the Aquifer.

As we discussed above, our state's common-law definition of watercourse has consistently held that whether a body of water has defined banks, bottom, and channel is not conclusive in determining if that body of water is a watercourse. We hold that the phrase "any other body of water" in Indiana Code § 36-9-1-10 refers to any other body of water satisfying our common-law definition of a watercourse. While that body of water's similarity to a lake, stream, or river would be informative, it would not be dispositive. This interpretation reflects the fact-specific nature of the inquiry and comports with our presumption that when the Legislature appears to modify the common law by statute, "it is aware of the common law and that its intention is to not change the common law beyond what the express terms of its enactments and fair implications allow." Midtown Chiropractic v. Ill. Farmers Ins. Co., 847 N.E.2d 942, 947 (Ind. 2006).

We turn then to the White Lick Creek Aquifer. Nothing in the common-law definition of a watercourse presumptively excludes subterranean water merely because it is subterranean. See Gagnon v. French Lick Springs Hotel Co., 163 Ind. 687, 696, 72 N.E. 849, 851–52 (1904); see also Wiggins v. Brazil Coal & Clay Corp., 452 N.E.2d 958, 963 (Ind. 1983) (addressing "lost water that percolates the soil below the surface of the earth, in hidden recesses, without a known channel or course" (emphasis added)); Bump v. Sellers, 54 Ind. App. 146, 150, 102 N.E. 875, 877 (1913) ("Counsel for appellee have contended that the waters sought to be drained were underground or percolating waters and not governed by the law relating to natural water courses. It is mainly a question of fact and a matter of proof as to whether the waters drained were a natural water course."). The distinction between the "lost water" of Wiggins and an underground watercourse is no different than the distinction between surface water and a surface watercourse.

To begin, we note that the Indiana Code defines an aquifer, for purposes of its Water Resource Management Statutes, as "an underground geologic formation that: (1) is consolidated or unconsolidated; and (2) has the ability to receive, store, and transmit water in amounts sufficient for the satisfaction of any beneficial use." Ind. Code § 14-25-7-1 (2004). This definition seems to indicate some of the characteristics we might look for in a watercourse. We thus examine the particular characteristics of the White Lick Creek Aquifer.

First, the evidence shows that the Aquifer has definable boundaries and depth based on the composition of the soil in which the water percolates. (Appellant's App. at 297, 300, 565, 566.)[6] "The thick outwash valley deposits abruptly change to clay rich or bedrock deposits at the margin of the valley resulting in a distinct boundary between the outwash aquifer and the valley walls." (Appellant's App. at 565) (emphasis added). The Aquifer has been determined to be between forty and sixty-five feet below ground level, with a thickness ranging from fifteen to fifty feet, depending on the topography of the bedrock beneath it. (Appellant's App. at 297, 300.) The Aquifer measures up to 2000 feet at its widest point and notably thins as the valley around it narrows. (Appellant's App. at 300.) It is also "relatively continuous along the length of White Lick Creek . . . ." (Appellant's App. at 300.) The Aquifer is sufficiently well defined that the City of Indianapolis's Department of Waterworks can map its location with startling precision. (Appellant's App. at 566.)

In sum, while the hydrogeologic studies do not speak in terms of the Aquifer's banks, beds, and bottom, they do clearly speak in terms of well-defined boundaries. This difference is one of linguistics, not of law.

---

[6] The information cited here comes from a Water Supply Availability Evaluation prepared for WCCD in March 2005, and from a Regional Water Authority Study prepared by the City of Indianapolis's Department of Waterworks in April 2005.

Second, the evidence does not explicitly state the age of the Aquifer, so it is hard to determine if it has existed "immemorially." However, it does note that the Aquifer is composed of sand and gravel deposited by receding glaciers. (Appellant's App. at 297, 565.) Additionally, it seems apparent that all parties accept that the Aquifer is a regular and dependable source of water, containing water within the same boundaries ordinarily and permanently for substantial periods of each year. If this were not the case, then any attempt to draw water from the Aquifer for commercial purposes would seem to be an unsound proposition.

Finally, we address the issue of the Aquifer's "flow."[7] Here, the evidence does not indicate a particular directional flow of water in the Aquifer. Although its boundaries generally follow the course of the White Lick Creek, it is not clear if that means the water "flows" within the Aquifer. (Appellant's App. at 300.) Of course, lakes and ponds also lack a "flow," unless they are connected to, or fed by, an additional flowing water source. That the body of water is self-contained, and so the water lacks internal movement, does not mean the water is not contained within a watercourse. Moreover, the evidence indicates that the Aquifer is regionally connected to other aquifers and surface streams, leading to a reasonable inference that the water within the aquifer "flows." (Appellant's App. at 297, 565–66.)

Under the facts of this case, there is sufficient evidence to distinguish the groundwater within the White Lick Creek Aquifer from the "lost water" referred to in Wiggins. While we stop short of declaring a bright-line rule that all aquifers are watercourses, we must reject the demand for a bright-line rule to the contrary.[8] Given the evidence presented, we conclude that the facts demonstrate that the White Lick Creek Aquifer is a watercourse under Indiana law.

---

[7] This matters because of Indiana Code § 36-9-2-11: "A unit may regulate conduct that might alter the temperature of water, or affect the flow of water, in a watercourse."

[8] The parties presented and interpreted scientific evidence to indicate that aquifers were, or were not, watercourses. (Appellant's Br. at 13–14; Appellee WCCD's Br. at 27–29.) Similarly, the parties briefed

## II.    The Home Rule Act

We look next at whether Avon's ordinance complies with the requirements of Indiana's Home Rule Act.

Indiana's Home Rule Act was a legislative decision to abrogate the old common-law rule that a local government could possess and exercise only those powers that had been "expressly granted by statute."  Ind. Code § 36-1-3-4(a); see also City of Crown Point v. Lake Cty., 510 N.E.2d 684, 685 (Ind. 1987).  Instead, a local governmental body has "all powers granted it by statute; and . . . all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute."  Ind. Code § 36-1-3-4(b).  Moreover, any doubts about the existence of a particular power "shall be resolved in favor of its existence."  Ind. Code § 36-1-3-3(b).

Still, the Home Rule Act's grant of authority is not unlimited.  A unit's power may only be exercised to the extent that it "is not expressly denied by the Indiana Constitution or by statute; and . . . is not expressly granted to another entity."  Ind. Code § 36-1-3-5(a).  Furthermore, a unit does not have the power "to impose duties on another political subdivision, except as expressly granted by statute," nor may a unit "regulate conduct that is regulated by a state agency, except as expressly granted by statute."  Ind. Code § 36-1-3-8(a)(3), (a)(7).  However, we have recognized that a "[s]trict interpretation of the limitation that a unit may not impose a duty on a political subdivision without express statutory authority" would lead to absurd results.  City of Crown Point, 510 N.E.2d at 686.

---

extensively with regard to cases from other jurisdictions in which insurance policies were interpreted so as to include aquifers within the policy's definition of "watercourse."  (Appellant's Br. at 14–16; Appellee WCCD's Br. at 29–31.)  We do not find the scientific evidence conclusive, nor do we base a decision regarding our common law with respect to water upon interpretation of insurance policies from other states.  Our decision today is based on our existing common law, the Indiana Code, and the facts of this case.

In City of Crown Point, Lake County sought to re-purpose a county government building—located within Crown Point's limits—to a use not permitted under the applicable zoning code of Crown Point. Even though the city's general power to regulate zoning did not expressly include a power to require the county government to comply with those zoning regulations, we pointed out that "none of the powers delegated to government units contain explicit authority to require compliance by another political subdivision." Id. at 686 (emphasis in original). We therefore held that the language "express statutory authority" permits a unit to enforce against another political subdivision "those regulations of general applicability which are specifically authorized by statute." Id.

Avon contends that its authority to regulate the taking of water from a watercourse under the Watercourse Statutes is just such a specific statutory authorization. (Appellant's Br. at 19–21.) Therefore, Avon argues, it has authorization to enact a regulation of general applicability (the ordinance), and to impose duties under that ordinance on other political subdivisions. Because we conclude that the Aquifer is a watercourse under the Watercourse Statutes, we agree.

Next, the Township argues that the ordinance violates Indiana's Park Resources Statutes[9] because those statutes expressly provide a park governor with the authority to "[a]cquire and dispose of real and personal property" and "[s]ell, lease, or enter into a royalty contract for the natural or mineral resources of park land." Ind. Code § 36-10-7.5-7(4), -7(6); (Appellee Township's Br. at 33–39).

Further, the Township argues that the Home Rule Act restricts Avon in that "[s]tate or local agencies may review or regulate the exercise of powers by a unit only to the extent prescribed by statute." Ind. Code § 36-1-3-7. The Township refers to this section as the "Review of Powers" Provision. Because the Watercourse Statutes do not explicitly provide

---

[9] Ind. Code §§ 36-10-7.5-1 to -27 (2007).

10

authorization to review a Township's powers under the Park Resources Statutes, the Township contends, Avon may not utilize the ordinance to regulate the Township's withdrawal of water from the Aquifer.

Because City of Crown Point is stare decisis against the Township on this point, the Township points out that City of Crown Point did not address the Review of Powers Provision. (Appellee Township's Br. at 34.) While that may be correct, we see little difference in the statutory language of the Review of Powers Provision and the language from Section 36-1-3-8 that we addressed in City of Crown Point.

The Review of Powers Provision speaks of regulation "only to the extent prescribed by statute," and Section 36-1-3-8 speaks of only imposing duties or regulating conduct "as expressly granted by statute." Ind. Code §§ 36-1-3-7, -8(3), (7). More to the point, applying the Township's muscular interpretation to the Review of Powers Provision risks the same absurd results that we decried in City of Crown Point.

Instead, we think the authority granted to Avon under the Watercourse Statutes is sufficient to permit it to regulate the Township's exercise of power pursuant to the Park Resources Statutes.[10] This harmonizes the effect of both sets of statutes—our first objective when confronted with two seemingly-conflicting provisions. Klotz v. Hoyt, 900 N.E.2d 1, 5 (Ind. 2009). We presume that the Legislature intended for both of these provisions to have effect, and thus construe them together "'so as to produce a harmonious statutory scheme.'" Id. (quoting Sanders v. State, 466 N.E.2d 424, 428 (Ind. 1984)).

---

[10] These powers are not identical. If they were, the Township here would lose because the Home Rule Act makes it plain that "[a] township may not exercise power the township has if another unit in which all or part of the township is located exercises that same power." Ind. Code § 36-1-3-5(b). This is the same reason why the Township cannot claim to regulate watercourses in Avon through the Watercourse Statutes, even though the Township is a "unit" for purposes of those statutes. See Indiana Code § 36-1-2-23 (2007). The WCCD, of course, is not a "unit." Id.

11

Therefore, while the Township retains the power to "[s]ell, lease or enter into a royalty contract" with respect to water from the Aquifer, the withdrawal of the water and the conduct of the prospective third-party vendor is subject to Avon's authority to "regulate the taking of water" from its watercourses. Cf. City of Carmel v. Martin Marietta Materials, Inc., 883 N.E.2d 781 (Ind. 2008) (upholding regulation of a mining company operating within city limits); City of Crown Point, 510 N.E.2d at 684 (holding harmonized a county's authority to construct buildings for a community corrections program with a town's general authority to regulate zoning). This would include a reasonable requirement that the Township—just like any other entity or individual not exempted by the ordinance—obtain a permit before withdrawing water from the Aquifer.

### III.     Conflict With, or Preemption by, State Regulations

The Township and WCCD further argue that the ordinance is invalid because it regulates conduct that is already regulated by Indiana's Department of Natural Resources. (Appellee Townships's Br. at 39–48; Appellee WCCD's Br. at 33–43.) The argument is two-fold: first, that the Home Rule Act prohibits the regulation of conduct that is already regulated by DNR except as expressly granted by statute, and second, that DNR has exclusive jurisdiction over underground water resources in the State of Indiana.

As to the first argument, we have already discussed that our findings with respect to the Aquifer's legal status as a watercourse provide the express grant of statutory authority required by the Home Rule Act. See Ind. Code § 36-1-3-8(a)(7). The cases cited by the Township and WCCD with respect to this argument did not address whether such an express grant of authority existed. See Ind. Dep't of Natural Res. v. Newton Cty., 802 N.E.2d 430 (Ind. 2004); Hopkins v. Tipton Cty. Health Dep't, 769 N.E.2d 604 (Ind. Ct. App. 2002); Hobble ex rel. Hobble v. Basham, 575 N.E.2d 693 (Ind. Ct. App. 1991). And while these cases do stand for the general proposition that a municipal ordinance may not "prohibit that which a statute expressly permits," Newton Cty., 802 N.E.2d at 433 (quoting Hobble, 575 N.E.2d at 697), they also hold that a local

government may "'impose additional, reasonable regulations, and . . . supplement burdens imposed by non-penal state law, provided the additional burdens are logically consistent with the statutory purpose.'" Id. (quoting Hobble, 575 N.E.2d at 697).

At this point, Avon has not established its permitting process pursuant to the ordinance. Therefore, we cannot determine whether any additional burdens and regulations are reasonable or logically consistent with the statutory purpose behind DNR's regulatory powers. But that does not mean the ordinance is invalid. "Like statutes, ordinances are presumptively valid and the party challenging an ordinance bears the burden of proving invalidity." Hobble, 575 N.E.2d at 697. Because we resolve all doubts in favor of this presumption, we presume the ordinance does not impose any unreasonable, additional regulations, nor is it logically inconsistent with any statutory purpose. See id.

It is true, however, that the above rule applies only where the State has not elected to occupy the field with respect to its regulation. See id. This brings us to the Appellees' second argument. The Township and WCCD argue that DNR occupies the field with respect to regulating the withdrawal of groundwater. (Appellee Township's Br. at 41–45; Appellee WCCD's Br. at 34–35.) We disagree.

To be sure, the Appellees are correct to say that a statute granting exclusive jurisdiction to a state agency need not always contain express language to that effect. We note here that the Home Rule Act provides that "a municipality has exclusive jurisdiction over . . . watercourses . . . inside its corporate boundaries, unless a statute provides otherwise." Ind. Code § 36-1-3-9(a) (emphasis added).[11]

---

[11] Cf. Ind. Code § 36-1-3-5(a) ("[A] unit may exercise any power it has to the extent that the power . . . is not expressly granted to another entity." (emphasis added)).

While DNR's statutory authority is extensive, however, it by no means occupies the field with respect to the regulation of groundwater withdrawal. The statutes permit DNR, when it "has reason to believe it is necessary and in the public interest . . . [to] designate certain areas of Indiana . . . as restricted use areas." Ind. Code § 14-25-3-4(a) (2004). Within that area, a person must obtain a permit from DNR to withdraw or use a quantity of groundwater "in excess of one hundred thousand (100,000) gallons per day in addition to the quantity the person is using at the time the order designating the area as a restricted use area becomes effective." Ind. Code § 14-25-3-6 (2004). Further, DNR "may determine and establish the minimum level of ground water in aquifers below which further withdrawals would be significantly harmful to the water resource of the area." Ind. Code § 14-25-7-14(d) (2004).

Nothing in these provisions—including the interstitial provisions setting forth the process for determining a "restricted use area" or for obtaining a permit—indicates that DNR occupies the field with respect to withdrawal of groundwater, or that such an authority has been expressly granted to it. Instead, these provisions clearly contemplate the potential for other entities to regulate. Finding otherwise would leave large areas of this field wholly unregulated—and unregulable—according to the Appellees. Geographically speaking, the DNR provisions do not address any area of Indiana that DNR does not reasonably believe necessary and in the public interest to declare a restricted use area. And from a standpoint of quantity, even within a restricted use area, the Appellees' approach would leave unregulated any withdrawal of an amount less than the amount set forth in Section 14-25-3-6. We see no reason why Avon cannot regulate in those areas not within the scope of the DNR provisions and, as discussed above, why Avon could not regulate in those areas within the scope of DNR's provisions. Provided, of course, such regulations are not unreasonable or logically inconsistent.

Finally, both the Township and WCCD argue that Avon's municipal-level regulation of the Aquifer makes no sense because an aquifer will ordinarily cross municipality and county lines (as this particular one does). (Appellee Township's Br. at 46 n.14; Appellee's WCCD's Br. at 41–42.) Therefore, the argument goes, statewide or regional regulation makes more sense. But the same could be said for many other types of watercourses, such lakes, rivers, or streams,

and yet the Indiana Code explicitly still grants units broad authority over them through the Watercourse Statutes. The clear implication of these provisions is that local governmental units have authority over watercourses within their territorial jurisdiction, and the State retains the authority—through DNR—to engage in regional or statewide regulation as needed. But these two powers can co-exist.

## IV. Common Law of Groundwater

Finally, Appellees argue that Avon's ordinance interferes with their common-law right to use their groundwater as they wish. This contention, however, rests on the notion that the Aquifer is not a watercourse.

Because we have held that the White Lick Creek Aquifer is a watercourse under Indiana law, it is not the "lost water" this Court addressed in Wiggins. The water there percolated the ground "below the surface of the earth, in hidden recesses, without a known channel or course." Wiggins, 452 N.E.2d at 963 (quoting Taylor v. Fickas, 64 Ind. 167, 172 (1878)). Such lost water "is considered at any given time to be part of the land with which it mingles." Id. at 963–64. But here we have a watercourse, and the General Assembly has granted municipalities, like Avon, the statutory authority to enact regulations concerning the withdrawal of water from a watercourse. Accordingly, neither the Township's nor WCCD's common-law right to use their water has been violated.

## Conclusion

We reverse the trial court's denial of Avon's motion for summary judgment and remand.

Dickson, Sullivan, Rucker, and David, JJ., concur.