**FILED**

Oct 29 2020, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

J. Michael Murray
Steven D. Shafron
William C. Livingston
Berkman, Gordon, Murray & DeVan
Cleveland, Ohio

James P. Buchholz
Angelica N. Fuelling
Tourkow, Crell, Rosenblatt & Johnson, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Robert W. Eherenman
Haller & Colvin, P.C.
Fort Wayne, Indiana

Scott D. Bergthold
Law Office of Scott D. Bergthold
Chattanooga, Tennessee

# IN THE
# COURT OF APPEALS OF INDIANA

B&S of Fort Wayne, Inc., d/b/a Showgirl I; Showgirl III, Inc., d/b/a Showgirl III; and JCF, Inc., d/b/a Brandy's Lounge,

*Appellants-Plaintiffs,*

v.

City of Fort Wayne, Indiana,

*Appellee-Defendant.*

October 29, 2020

Court of Appeals Case No.
20A-MI-466

Appeal from the Allen Superior Court

The Honorable Jennifer L. DeGroote, Special Judge

Trial Court Cause No.
02D09-1909-MI-662

**Najam, Judge.**

# Statement of the Case

In August of 2019, the City of Fort Wayne ("the City") passed an ordinance, Fort Wayne Ordinance No. G-19-19 ("the ordinance"), which regulates "sexually oriented businesses," including "adult cabarets." Appellants' App. Vol. 2 at 47. B&S of Fort Wayne, Inc., d/b/a Showgirl I; Showgirl III, Inc., d/b/a Showgirl III; and JCF, Inc., d/b/a Brandy's Lounge (collectively "the Nightclubs") own adult cabarets located in Ft. Wayne. In September of 2019, the Nightclubs filed a complaint seeking a preliminary injunction, a permanent injunction, and a declaratory judgment. In particular, the Nightclubs alleged that the ordinance violated their constitutional rights to free speech and posed "irreparable harm" to them if it were enforced. *Id.* at 96. In response, the City filed a counterclaim seeking its own preliminary injunction to enforce the ordinance and a declaratory judgment that the ordinance was constitutional. Following a hearing on the motions, the trial court denied the Nightclubs' motion for a preliminary injunction and granted the City's motion for a preliminary injunction.

The Nightclubs appeal the trial court's order denying their motion for a preliminary injunction. The Nightclubs present three dispositive issues for our review:

> 1. Whether the trial court erred when it found that the Nightclubs are unlikely to succeed on the merits of their claim that the ordinance is prohibited by Indiana Code Section 7.1-3-9-6.

2. Whether the trial court erred when it found that the Nightclubs are unlikely to succeed on the merits of their claim that the ordinance is preempted by Indiana Code Section 36-1-3-8(a)(7).

3. Whether the trial court erred when it found that the Nightclubs are unlikely to succeed on the merits of their claim that the ordinance is unconstitutional under Justice Kennedy's concurring opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002).

We affirm.

## Facts and Procedural History

The Nightclubs own and operate adult cabarets in Ft. Wayne ("the cabarets"), which serve alcohol to customers who come to watch partially-nude dancers perform. In addition to performances on a stage, dancers perform for customers table-side, and they perform lap dances for customers in "semi-private" areas separate from the main stage area. *Id.* at 50. Whether dancers are performing on stage, at a table, or in the lap dance area, they frequently make direct physical contact with customers.

On August 13, 2019, the Ft. Wayne City Council adopted the ordinance, which was intended to "protect and preserve the health, safety, and welfare" of both patrons of sexually oriented businesses and "citizens of the City[.]" Ex. 1 at 1. The ordinance provides in relevant part as follows:

§121.16 PROHIBITED CONDUCT.

(A)     No patron, employee, or any other person shall knowingly or intentionally, in a sexually oriented business, appear in a state of nudity or engage in a specified sexual activity.

(B)     No person shall knowingly or intentionally, in a sexually oriented business, appear in a semi-nude condition unless the person is *an employee who, while semi-nude, remains at least six (6) feet from all patrons and on a stage at least eighteen (18) inches from the floor in a room of at least six hundred (600) square feet*.

(C)     No employee who appears semi-nude in a sexually oriented business shall knowingly or intentionally touch a customer or the clothing of a customer on the premises of a sexually oriented business.  No customer shall knowingly or intentionally touch such an employee or the clothing of such an employee on the premises of a sexually oriented business.

* * *

(E)     No operator of a sexually oriented business shall knowingly or recklessly allow a room in the sexually oriented business to be simultaneously occupied by any patron and any other employee who is semi-nude or who appears semi-nude on the premises of the sexually oriented business, unless an operator of the sexually oriented business is present in the same room. . . .

Ex. 1 at 21-22 (emphasis added).

[6]     In their complaint seeking a preliminary injunction, the Nightclubs first alleged that the ordinance "runs afoul of [Indiana Code Section] 7.1-3-9-6," which prohibits a city from enacting an ordinance "which in any way, directly or indirectly, regulates, restricts, enlarges, or limits the operation or business of the holder of a liquor retailer's permit[.]"  Appellants' App. Vol. 2 at 87.  In

particular, the Nightclubs asserted that the ordinance "impermissibly regulates, restricts and limits the operation" of their businesses in several ways in violation of the statute, including: requiring the Nightclubs "to undertake extensive and costly remodeling of their permit premises" to satisfy the six-foot spacing requirement; "diminish[ing] the number of patrons that their businesses can accommodate and thus reduce the audience"; and requiring "that an Operator of the business be present in the same room whenever a semi-nude performance is taking place." *Id.* at 87-88.

[7] The Nightclubs also alleged that the ordinance is preempted by Indiana Code Section 36-1-3-8(a)(7), which provides that a city does not have the power under the Home Rule Act "to regulate conduct that is regulated by a state agency, except as expressly granted by statute." In particular, the Nightclubs averred that, because the Alcohol and Tobacco Commission "has chosen to regulate adult entertainment in alcohol permit premises, . . . the City lacks the authority to do so." Appellants' App. Vol 2 at 89. Finally, the Nightclubs alleged that the ordinance violates various rights they have under the federal and state constitutions. In its counterclaim, the City sought a preliminary injunction and a permanent injunction "to prevent and to punish certain unlawful acts contrary to" the ordinance. *Id.* at 139.

[8] Following a hearing on the complaint and counterclaim, the trial court denied the Nightclubs' request for a preliminary injunction and granted the City's request for a preliminary injunction. In its order, the trial court made thorough findings and conclusions, including in pertinent part, the following:

12. [The Nightclubs] are not in complete compliance with the Ordinance.

13. [The Nightclubs] all have semi-nude female dancers who start in a full outfit and then strip down to a "t-bar" (otherwise commonly known as g-string) and a latex product covering their nipples. [The Nightclubs] acknowledge the latex product can wear off during a performance requiring the dancer to leave the stage and reapply it.

14. [The Nightclubs] have female employees who perform lap dances or other private and semi-private dances in VIP rooms. . . . All of these dances involve performers, in a semi-nude state, touching customers or customers' clothing. Performers are not six (6) feet away from customers on stage while dancing.

15. [The Nightclubs] allow customers to tip semi-nude performers by "tucking bucks" into a performer's garter and t-bar. This method of tipping involved customers touching semi-nude performers or the performers' clothing. Performers are not six (6) feet away from customers when this method of tipping occurs.

16. The Ordinance imposes fines on an employee or business that violates the Ordinance. . . .

* * *

17. Fort Wayne has not yet enforced the Ordinance and has agreed to withhold enforcement of the Ordinance while awaiting a ruling from the Court.

18. [The Nightclubs] all possess a liquor permit issued by the State of Indiana's Alcohol and Tobacco Commission.

19. Title § 7.1 of the Indiana Code governs Alcohol and Tobacco in Indiana.

20. [Indiana Code] § 7.1-1-1-1 states:

> The following are the general purposes of this title:
> (1) To protect the economic welfare, health, peace, and morals of the people of this state.
>
> (2) To regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages. . . .

21. [Indiana Code] § 7.1-1-2-2 states:

> Except as provided in [I.C. §] 7.1-5-1-3, [I.C. §] 7.1-5-1-6, [I.C. §] 7.1-5-7 and [I.C. §] 7.1-5-8, this title applies to the following:
>
> a) The commercial . . . selling, . . . furnishing, or possession of alcohol, alcoholic beverages, industrial alcohol, malt, malt syrup, malt extract, liquid malt or wort. . . .

22. [I.C.] § 7.1-3-9-6 states:

> a) A city . . . shall not enact an ordinance . . . which in any way, directly or indirectly, regulates, restricts, enlarges, or limits the operation or business of the holder of a liquor retailer's permit as provided in this title.
>
> b) A city . . . shall not enact an ordinance . . . covering any other business or place of business for the conduct of it in such a way as to prevent or inhibit the holder of a liquor retailer's permit from being qualified to obtain or continue to hold the

permit, or operate to interfere with or prevent the exercise of the permittee's privileges under the permit.

23. Title 905 of the Indiana Administrative Code ("IAC") addresses the Alcohol and Tobacco Commission.

24. Title 905, Article 1, Rule 16.1 covers dancing and provides:

Sec. 1 Dancing permitted

"It is permissible for permittees to allow dancing upon their permit premise without the necessity of first obtaining a permit or other authorization from the Alcohol and Tobacco Commission (commission). All floor plans must be approved by the commission."

Sec. 3 Nudity in exhibition or professional dancing; restrictions

a. For the purpose of this rule, the following definitions apply:

1) "Nudity" means the showing of the human male[ or female] genitals, pubic area, or buttocks with less than a full[y] opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernible turgid state. . . .

b. It is unlawful for a permittee to knowingly allow a person to engage in sexual intercourse, deviate sexual conduct, as defined in [I.C.] § 35, to appear in a state of nudity or to fondle the genitals of himself or

another person while on the permittee's licensed premises.

PRELIMINARY INJUNCTION STANDARD

To obtain a preliminary injunction, the moving party must demonstrate by a preponderance of the evidence that: (1) its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) there exists a reasonable likelihood of success at trial; (3) the threatened injury to the movant outweighs the potential harm to the nonmovant from the granting of an injunction; and (4) the public interest would not be disserved. *See State v. Econ. Freedom Fund*, 959 N.E.2d 794, 803 (Ind. 2011) (citing *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003). If the movant fails to prove any of these requirements, the trial court should deny a request for a preliminary injunction. *Apple Glen Crossing*, 784 N.E.2d. at 487.

However, "[w]here the action to be enjoined is unlawful, the unlawful act constitutes per se 'irreparable harm' for the purposes of the preliminary injunction analysis." *Union Twp. Sch. Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 192 (Ind. Ct. App. 1998); *Short on Cash.net of New Castle, Inc. v. Dep't of Fin. Insts.*, 811 N.E.2d 819, 823 (Ind. Ct. App. 2004). When the per se rule is invoked, the court has determined that a party's actions have violated a statute and, thus, that the public interest is so great that the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. *Id.*

In this case [the Nightclubs] argue Fort Wayne's actions in enacting the Ordinance are unlawful and, therefore, unconstitutional and the per se rule on preliminary injunctions should be invoked on [the Nightclubs'] Motion. Conversely, Fort Wayne argues the Ordinance is valid and [the Nightclubs] are engaging in unlawful acts as [the Nightclubs] are not in

compliance with the Ordinance. Thus, Fort Wayne also believes the per se rule on preliminary injunctions should be invoked on [its] Motion.

CONCLUSIONS OF LAW

A. THE ORDINANCE IS NOT PRE-EMPTED UNDER I.C. § 36-1-3-8(a)(7) OF THE HOME RULE ACT AS IT REGULATES CONDUCT THAT IS NOT REGULATED BY A STATE AGENCY

* * *

32. The Ordinance at issue does prohibit certain things that I.C. § 7.1 and the administrative code title pertaining to the Alcohol and Tobacco Commission addresses, but the Ordinance does not restrict the operation of the liquor retail permit holder's business in any way with respect to the sale of alcohol or liquor, and the Ordinance does not affect the liquor permit itself. *See O'Banion v. State*, 253 N.E.2d 739 (Ind. [Ct.] App. 1969).

* * *

38. The Ordinance is, therefore, not an impermissible attempt by the [sic] Fort Wayne to regulate conduct regulated by the State and is not preempted under I.C. § 36-1-3-8(a)(7). The Ordinance does not regulate whether a sexually oriented business obtains a liquor permit nor does it place any requirements or limitations on the businesses' sale of liquor. The Ordinance establishes requirements for operating a sexually oriented business specifically here, an adult cabaret, within Fort Wayne.

THE ORDINANCE IS NOT PRE-EMPTED UNDER THE HOME RULE ACT AS IT IS NOT AN ATTEMPT TO REGULATE AN AREA WHERE THE STATE ALREADY OCCUPIES THE FIELD

39. "When a state statute totally preempts the field, a city may not further legislate therein and any attempt to impose regulations in conflict with rights granted or reserved by the legislature, such ordinances and regulations are invalid." *City of Indianapolis v. Fields*, 506 N.E.2d 1128, 1131 (Ind. Ct. App. 1987).

40. As stated above, the State of Indiana has chosen not to involve itself in the regulation of sexually oriented businesses. Therefore, it cannot be said the state has totally preempted this field.

41. The Ordinance regulates sexually oriented businesses which is an area the State of Indiana has chosen not to occupy to the exclusion of municipal regulation. Therefore, the Ordinance is not an attempt to regulate an area occupied by the State of Indiana.

\* \* \*

THE ORDINANCE IS CONSTITUTIONAL UNDER JUSTICE KENNEDY'S CONCURRING OPINION IN *ALAMEDA BOOKS*

79. Justice Kennedy's concurring opinion in *Alameda Books* focused on whether the law, in its effort to reduce adverse secondary effects, does so by failing to leave the quantity and accessibility of speech substantially intact. A municipality's rationale must be premised on the theory that it may reduce the costs of secondary effects without substantially reducing speech. *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 450 (2002).

80. The Ordinance in this case requires the [Nightclubs] to remodel their interior businesses to comply with the requirement that all dance performances take place in a room that is at least six hundred (600) square feet and take place at least six (6) feet away from every patron in the premises.

81. [The Nightclubs] claim that in order to comply with the Ordinance, they would have to limit the areas available to present performances and also the modifications would decrease the number of patrons who are able to view the constitutionally protected entertainment [the Nightclubs] present.

82. [The Nightclubs] allege the Ordinance improperly seeks to reduce secondary effects by reducing the constitutionally protected speech or the audience there to view the constitutionally protected speech.

83. Regulations that are adopted to address adverse secondary effects of sexually oriented businesses are constitutional if they are narrowly tailored to serve a substantial government interest and leave open adequate alternative avenues of communication. *See City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986).

84. Least restrictive regulations are not required, but a governmental entity will satisfy the narrow tailoring requirement as long as [the] "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.8. 781, 798-99 (1989).

85. The restrictions on sexually oriented businesses put in place by the Ordinance have the effect of reducing patron access to performers with the six (6) foot barrier and eliminate the ability to have the entertainers perform "lap dances" and other one-on-one encounters in places such as VIP rooms. The Ordinance also imposes monitoring by management which is put in place to ensure patrons and employees are not engaging in any illegal activity such as the performance of lewd dances or other illegal sex acts.[]

86. The restrictions put in place are clearly premised on the theory that they may reduce the cost of secondary effects and were crafted in a way without substantially reducing the

constitutionally protected speech. Therefore[,] the Ordinance is constitutional.

## H. [THE NIGHTCLUBS'] PETITION FOR [A] PRELIMINARY INJUCTION IS DENIED WITH RESPECT TO ALL FACTORS

87. [The Nightclubs] focus most of their argument on the position that they are likely to succeed on the merits of their claims and because the enacting of the Ordinance was unlawful, it constitutes per se irreparable harm for purposes of a preliminary injunction analysis.

88. [The Nightclubs] have failed to establish that the enacting of the Ordinance was an unlawful act and, therefore, the per se test cannot be invoked. To obtain a preliminary injunction, [the Nightclubs] must show that their: 1) remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) they have at least a reasonable likelihood of success at trial; 3) their threatened injury outweighs the potential harm to the City of Fort Wayne resulting in the granting of an injunction; and 4) the public interest would not be disserved. [The Nightclubs] devote approximately one (1) page of their thirty-five (35) page brief to these "other factors favoring the issuance of an injunctive relief." However[,] this issue can be determined by one factor.

89. As the Court has already set forth above, [the Nightclubs] failed to establish they have a reasonable likelihood of success at trial as to whether the Ordinance is preempted by state law and is unconstitutional. As [the Nightclubs] have not shown a reasonable likelihood of success at trial this requirement in the analysis for granting a preliminary injunction has not been met.

90. If a movant fails to prove any of the requirements to obtain a preliminary injunction, the trial court should deny the request for

a preliminary injunction. *See Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003).

> 91. As [the Nightclubs] have failed to prove a reasonable likelihood of success at trial, their request for preliminary injunction is DENIED.

*Id.* at 50-71. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

[9]    The Nightclubs contend that the trial court erred when it denied their motion for a preliminary injunction.[1]  Our standard of review is well settled:

> "when reviewing findings of fact and conclusions of law entered upon the denial of a motion for preliminary injunction pursuant to Trial Rule 52(A)(1), we must determine if the trial court's findings support its judgment and will reverse the judgment only when clearly erroneous. *Oxford Fin'l Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1141 (Ind. Ct. App. 2003).  Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences therefrom to support them. *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.*, 826 N.E.2d 49, 62 (Ind. Ct. App. 2005).  The trial court's judgment is clearly erroneous only if it is unsupported by the findings and the conclusions that rely upon those findings. *N. Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 421 (Ind. Ct. App. 2004).  We may neither reweigh the evidence nor

---

[1]  While the Nightclubs argue that the trial court erred when it denied their motion for a preliminary injunction, they do not present any argument on whether the court erred when it granted the City's motion for a preliminary injunction.  While those issues are two sides of the same coin, our analysis in this appeal is limited to whether the Nightclubs have shown that the trial court erred when it concluded that the Nightclubs are not likely to succeed at trial.

reassess witness credibility. *Oxford Fin'l*, 795 N.E.2d at 1141. Additionally, even an erroneous finding is not fatal to a trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law. *Lakes & Rivers Transfer v. Rudolph Robinson Steel Co.*, 795 N.E.2d 1126, 1132 (Ind. Ct. App. 2003).

Furthermore, [the Appellants are] appealing from a negative judgment and must, therefore, establish that the trial court's judgment is contrary to law. *N. Elec. Co.*, 819 N.E.2d at 421. A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* We review conclusions of law de novo and give no deference to the trial court's determinations about such questions. *Id.* at 422.

*Curley v. Lake Cty. Bd. of Elections and Registration*, 896 N.E.2d 24, 32 (Ind. Ct. App. 2008) (quoting *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1074-75 (Ind. Ct. App. 2005)), *trans. denied*.

[10] As the trial court recognized, to obtain a preliminary injunction, the Nightclubs had the burden of showing by a preponderance of the evidence that: (1) their remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) they had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to them outweighed the potential harm to the City resulting from the granting of an injunction; and (4) the public interest would not be disserved by the granting

of a preliminary injunction.[2] *Id.* at 32-33. If the party moving for an injunction fails to prove any of those four requirements, a grant of an injunction to that party is an abuse of discretion. *Id.* at 33. Stated another way, if, on appeal, the moving party cannot demonstrate that it proved *each* of those four requirements then the trial court's denial of the movant's request for an injunction must be affirmed. *See id.*

### Issue One: Indiana Code Section 7.1-3-9-6

[11] The Nightclubs first contend that the trial court erred when it found that they are unlikely to succeed on the merits of their claim that the ordinance is prohibited by Indiana Code Section 7.1-3-9-6, which provides as follows:

> (a) A city . . . shall not enact an ordinance . . . which in any way, directly or indirectly, regulates, restricts, enlarges, or limits the operation or business of the holder of a liquor retailer's permit as provided in this title.
>
> (b) A city . . . shall not enact an ordinance . . . covering any other business or place of business for the conduct of it in such a way as to prevent or inhibit the holder of a liquor retailer's permit from being qualified to obtain or continue to hold the permit, or

---

[2] The Nightclubs assert that they need not prove all four elements because the "per se rule" applies here. "The per se rule says that, 'when the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of the hardship in his favor.'" *Combs v. Daniels*, 853 N.E.2d 156, 160 (Ind. Ct. App. 2006) (quoting *L.E. Servs., Inc. v. State Lottery Comm'n*, 646 N.E.2d 334, 349 (Ind. Ct. App. 1995)). However, here, while the trial court applied the per se rule to the City's motion for a preliminary injunction, the court did not apply it to the Nightclubs' motion. And, on appeal, the Nightclubs do not contend that the trial court erred when it did not apply the per se rule to their motion.

operate to interfere with or prevent the exercise of the permittee's privileges under the permit.

The Nightclubs maintain that the "expansive language" of this statute "emphatically communicate[s] a directive to interpret [it] liberally" to mean that, because the Nightclubs are permitted liquor retailers, the City cannot regulate its businesses "in any way." Appellant's Br. at 27.

[12] "'Like statutes, ordinances are presumptively valid and the party challenging an ordinance bears the burden of proving invalidity.'" *Town of Avon v. West Central Conserv. Dist.*, 957 N.E.2d 598, 607 (Ind. 2011) (quoting *Hobble ex rel. Hobble v. Basham*, 575 N.E.2d 693, 697 (Ind. Ct. App. 1991)). As our Supreme Court has stated:

> statutory interpretation is a question of law that we review de novo. In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we apply words and phrases in their plain, ordinary, and usual sense. When a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. When faced with an ambiguous statute, our primary goal is to determine, give effect to, and implement the intent of the Legislature with well-established rules of statutory construction. We examine the statute as a whole, reading its sections together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

*Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (cleaned up).

[13]     The Nightclubs assert that the statute is unambiguous and that, by its plain meaning, it prevents the kind of regulation established by the ordinance. The trial court, however, noted the "general purposes" of Title 7.1, which include in relevant part "[t]o regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages." I.C. § 7.1-1-1-1. The trial court found that

> [t]he Ordinance at issue does prohibit certain things that I.C. § 7.1 and the administrative code title pertaining to the Alcohol and Tobacco Commission addresses, but the Ordinance does not restrict the operation of the liquor retail permit holder's business in any way with respect to the sale of alcohol or liquor, and the Ordinance does not affect the liquor permit itself. *See O'Banion v. State*, [146 Ind. App. 223, ]253 N.E.2d 739 (Ind. [Ct.] App. 1969).

Appellants' App. Vol. 2 at 58. Thus, the trial court concluded that the ordinance is not invalid under Indiana Code Section 7.1-3-9-6.

[14]     We agree with the trial court's interpretation of Indiana Code Section 7.1-3-9-6. In *O'Banion*, we interpreted the predecessor statute as being "applicable *only* to the business of selling alcoholic beverages." 253 N.E.2d at 745. We stated that the zoning ordinance at issue in *O'Banion* was

> not a regulation governing the sale of, the traffic in, or the transportation of, alcoholic beverages. It is not the levy of a tax or fee or license to permit the sale of alcoholic beverages. The ordinance does not in any way regulate, restrict, enlarge or limit the operation or business of the holder of a liquor retail permit or his privileges under such permit as prescribed by the Alcoholic

> Beverage Act. The ordinance very simply covers the utilization of real property.

*Id.* Thus, we held that the zoning ordinance was not prohibited by the predecessor to Indiana Code Section 7.1-3-9-6. *Id.*

Likewise, here, nothing in the ordinance either directly or indirectly regulates, restricts, enlarges, or limits the operation or business of the Nightclubs' permits to sell alcohol. We therefore hold that the ordinance does not violate Indiana Code Section 7.1-3-9-6. The trial court did not err when it concluded that the Nightclubs have not shown a likelihood of success at trial on this issue.

### *Issue Two: Indiana Code Section 36-1-3-8(a)(7)*

The Nightclubs next contend that the ordinance is preempted by Indiana Code Section 36-1-3-8(a)(7) of the Home Rule Act, which provides that a unit of local government does not have "[t]he power to regulate conduct that is regulated by a state agency, except as expressly granted by statute." The Nightclubs' argument on this issue is two-fold. First, the Nightclubs reiterate their assertion under Issue One that, because their businesses involve the sale of alcohol, only the State can regulate their businesses. For the same reasons set out above, the Nightclubs are incorrect. Second, the Nightclubs assert that, because the Alcohol and Tobacco Commission ("the ATC") has enacted regulations that pertain to adult entertainment, the City may not also enact such regulations. In short, the Nightclubs maintain that the State has occupied the field with respect to regulating adult entertainment, including adult cabarets. We cannot agree.

[17]    Under the Home Rule Act, the City

> has "all powers granted it by statute; and . . . all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." [I.C.] § 36-1-3-4(b).  Moreover, any doubts about the existence of a particular power "shall be resolved in favor of its existence."  [I.C.] § 36-1-3-3(b).
>
> Still, the Home Rule Act's grant of authority is not unlimited.  A unit's power may only be exercised to the extent that it "is not expressly denied by the Indiana Constitution or by statute; and . . . is not expressly granted to another entity."  [I.C.] § 36-1-3-5(a).  Furthermore, a unit does not have the power "to impose duties on another political subdivision, except as expressly granted by statute," nor may a unit "regulate conduct that is regulated by a state agency, except as expressly granted by statute."  [I.C.] § 36-1-3-8(a)(3), (a)(7).  However, we have recognized that a "[s]trict interpretation of the limitation that a unit may not impose a duty on a political subdivision without express statutory authority" would lead to absurd results.  *City of Crown Point*[*v. Lake Cty.*, 510 N.E.2d 684, 686 (Ind. 1987)].

*Town of Avon*, 957 N.E.2d at 605.

[18]    In *Town of Avon*, our Supreme Court addressed the issue of whether the State had "elected to occupy the field with respect" to the regulation of the withdrawal of underground water resources.  957 N.E.2d at 607.  The Court noted that, "[w]hile [the State agency]'s statutory authority is extensive, . . . it by no means occupies the field with respect to the regulation of groundwater withdrawal."  *Id.* at 608.  The Court then cited three statutes setting out various restrictions on groundwater withdrawal and observed that nothing in the statutes "indicate[d] that [the State agency] occupies the field with respect to

withdrawal of groundwater, or that such an authority has been expressly granted to it." *Id.* The Court concluded, "[w]e see no reason why Avon cannot regulate in those areas not within the scope of the [statutes] and, as discussed above, why Avon could not regulate in those areas within the scope of [the statutes]. Provided, of course, such regulations are not unreasonable or logically inconsistent." *Id.*

[19] Here, in support of their contention that the State has occupied the field of adult entertainment regulation, the Nightclubs cite two sections of Title 905, Article 1, Rule 16.1. The first section, 905 IAC § 1-16.1-1, provides that "[i]t is permissible for permittees to allow dancing upon their permit premise without the necessity of first obtaining a permit or other authorization from the alcohol and tobacco commission (commission). All floor plans must be approved by the commission." And the second section, 905 IAC § 1-16.1-3, defines "nudity" and provides in relevant part that "[i]t is unlawful for a permittee to knowingly allow a person to engage in sexual intercourse, deviate sexual conduct, . . . to appear in a state of nudity[,] or to fondle the genitals of himself or another person while on the permittee's licensed premises."

[20] On this issue, the trial court concluded,

> [t]he conduct regulated by the State pertains to those holding valid alcoholic beverage permits and is not specific regulation of sexually oriented businesses by a state agency. . . . The Ordinance is, therefore, not an impermissible attempt by Fort Wayne to regulate conduct regulated by the State and is not preempted under I.C. § 36-1-3-8(a)(7). The Ordinance does not

> regulate whether a sexually oriented business obtains a liquor permit nor does it place any requirements or limitations on the businesses' sale of liquor. The Ordinance establishes requirements for operating a sexually oriented business specifically here, an adult cabaret, within Fort Wayne.

Appellants' App. Vol. 2 at 59. The trial court recognized that, while the State has enacted laws pertaining to adult entertainment, the State "has chosen not to involve itself in the regulation of sexually oriented businesses. Therefore, it cannot be said the State has totally preempted this field." *Id.* at 60.

[21] We agree with the trial court that nothing in the administrative code provisions cited by the Nightclubs indicate the State's intent to occupy the field of the regulation of adult cabarets. While the State regulates some aspects of "adult entertainment" within the context of the sale of alcoholic beverages, the regulations cited by the Nightclubs merely prohibit nudity and require approval of floor plans for dancing. *See* 905 IAC § 1-16.1-1; 905 IAC § 1-16.1-3(a). The State has not expressly reserved the power to regulate adult cabarets, and nothing in the ordinance is unreasonable or logically inconsistent with the State regulations.[3] *See Town of Avon*, 957 N.E.2d at 608.

[22] The Home Rule Act provides that "[a] unit may regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare." I.C. § 36-8-2-4. The City enacted the ordinance in order to "protect

---

[3] Both the ordinance and 905 IAC Section 1-16.1-3 prohibit nudity. And, while the ATC must approve a floor plan for dancing under 905 IAC Section 1-16.1-1, nothing in the ordinance conflicts with that authority.

and preserve the health, safety, and welfare" of both patrons of sexually oriented businesses and "citizens of the City[.]" Ex. 1 at 1. Because the State has not preempted the field of adult entertainment, the Nightclubs have not shown that the trial court erred when it concluded that they are not likely to succeed on the merits of this issue at trial.

### *Issue Three: Justice Kennedy's Opinion in* Alameda Books

[23]   Finally, the Nightclubs contend that, "in its effort to reduce [the] adverse secondary effects [on society associated with adult cabarets, the ordinance] does so by failing to leave the quantity and accessibility of speech substantially intact," in violation of the First Amendment to the United States Constitution. Appellants' Br. at 50. In support, the Nightclubs rely exclusively on Justice Kennedy's concurring opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 444 (2002) (Kennedy, J., concurring).[4]

[24]   In *Alameda Books*, the Court addressed a First Amendment challenge to a zoning ordinance that prohibited "more than one adult entertainment business in the same building" in an effort by Los Angeles to reduce crime associated with such businesses. 535 U.S. at 425. The Court, applying an intermediate scrutiny standard, reversed the grant of summary judgment in favor of the adult

---

[4] The Nightclubs assert that because Justice Kennedy "provided the fifth vote for reversal," his concurring opinion "constitutes the holding of the Court because it is the narrowest opinion joining the judgment." Appellants' Br. at 49 (citing *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 722 (7th Cir. 2003).

entertainment businesses on their motion for injunctive relief. *Id.* at 430. In his concurring opinion, Justice Kennedy wrote in relevant part as follows:

> At the outset, we must identify the claim a city must make in order to justify a content-based zoning ordinance. As discussed above, a city must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, *while leaving the quantity and accessibility of speech substantially intact*. The ordinance may identify the speech based on content, but only as a shorthand for identifying the secondary effects outside. A city may not assert that it will reduce secondary effects by reducing speech in the same proportion. . . . The rationale of the ordinance must be that it will suppress secondary effects—and not by suppressing speech.
>
> * * *
>
> The premise, therefore, must be that businesses—even those that have always been under one roof—will for the most part disperse rather than shut down. True, this premise has its own conundrum. As Justice SOUTER writes[ in his dissenting opinion], "[t]he city . . . claims no interest in the proliferation of adult establishments." *Post*, at 1748. The claim, therefore, must be that this ordinance will cause two businesses to split rather than one to close, that the quantity of speech will be substantially undiminished, and that total secondary effects will be significantly reduced. This must be the rationale of a dispersal statute.

*Id.* at 449-50 (Kennedy, J., concurring) (emphasis added). As the United States Court of Appeals for the Sixth Circuit has stated, "Justice Kennedy did not expand upon" the requirement that the quantity and accessibility of speech must be left intact "beyond noting that a state or municipality may not set out

to reduce the secondary effects of adult speech by proportionally reducing the availability of the speech itself." *Entertainment Prods., Inc. v. Shelby Cty. Tenn.*, 721 F.3d 729, 735 (6th Cir. 2013).

[25] On appeal, the Nightclubs do not challenge the trial court's finding that the restrictions imposed by the ordinance are "clearly premised on the theory that they may reduce the costs of secondary effects" associated with adult entertainment. Appellants' App. Vol. 2 at 69 (citing *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 721 (7th Cir. 2003)). Rather, the Nightclubs contend only that the trial court erred when it found that the restrictions "were crafted in a way without substantially reducing the constitutionally protected speech." *Id.* at 69-70. The Nightclubs maintain that, in order "to comply with the requirements of the Ordinance, each of the Nightclubs must remove a substantial portion of its seating, and reduce the number of patrons who are able to view the constitutionally protected entertainment that they present." Appellants' Br. at 50. Thus, they assert, the ordinance does not leave the quantity and accessibility of their speech substantially intact.

[26] However, nothing in the ordinance restricts the size of the Nightclubs' audiences. On its face, the ordinance does not impact the quantity or accessibility of their speech "by reducing speech or its audience." *Alameda Books*, 535 U.S. at 450. The ordinance does not prohibit the Nightclubs either from relocating to larger venues or remodeling their existing venues to accommodate the same number of customers under the ordinance.

In his concurring opinion in *Alameda Books*, Justice Kennedy expressly contemplated that some of the businesses impacted by the zoning ordinance might have to relocate. In particular, he stated, "[i]f two adult businesses are under the same roof, an ordinance requiring them to separate will have one of two results: One business will either move elsewhere or close. The city's premise cannot be the latter." *Id.* at 450-51. And he acknowledged that "dispersing two adult businesses under one roof is reasonably likely to cause a substantial reduction in secondary effects *while reducing speech very little*." *Id.* at 453 (emphasis added).

Justice's Kennedy's opinion states succinctly that "a city may not attack secondary effects indirectly by attacking speech." *Id.* at 450. But, again, his analysis also recognizes that, in order to preserve the quantity and accessibility of the protected speech, a business may need to relocate. In other words, in *Alameda Books* where the ordinance at issue was a dispersal ordinance, to require a business to disperse was not per se an indirect attack on speech.

The same analysis applies here. In order for the Nightclubs to comply with the ordinance, they may be required to provide more space to accommodate the same number of patrons, but that in itself does not amount to an indirect attack on constitutionally protected entertainment. On appeal, the Nightclubs contend that the ordinance "does not pass muster under Justice Kennedy's test" in *Alameda Books* simply because, they allege, the ordinance requires that each of the Nightclubs "remove a substantial portion of its seating, and reduce the number of patrons." Appellants' Br. at 50. But the Nightclubs' argument stops

short and does not address the part of Justice's Kennedy's opinion that makes clear that an ordinance may, in its operation and effect, require a business to relocate or expand the size of an existing venue without impairing constitutionally protected speech.[5]

[30] We hold that the trial court did not err when it concluded that the Nightclubs did not show a likelihood of success at trial on their claim that the ordinance violates their First Amendment rights as set out in Justice Kennedy's concurring opinion in *Alameda Books*.

## *Conclusion*

[31] In their motion for a preliminary injunction, the Nightclubs had the burden of showing by a preponderance of the evidence that: (1) their remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) they had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to them outweighed the potential harm to the City resulting from the granting of an injunction; and (4) the public interest would not be disserved by the granting of a preliminary injunction. *Curley*, 896 N.E.2d at 32-33. The trial court concluded that the Nightclubs have not shown a reasonable likelihood of success on their claims at trial, and we agree. Accordingly, we need not address the Nightclubs' perfunctory arguments on the other three elements they were

---

[5] Justice Kennedy's concurring opinion is notably silent regarding the potential costs of relocation.

required to prove. The trial court did not err when it denied the Nightclubs' motion for a preliminary injunction against the City.

[32] Affirmed.

Bradford, C.J., and Mathias, J., concur.